# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48338

| | | |
|---|---|---|
| MELVIN JEREMY SAVAGE, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, February 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: June 2, 2022 |
| | ) | |
| STATE OF IDAHO, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Joel E. Tingey, District Judge.

The decision of the district court is <u>affirmed</u>.

Eric D. Fredericksen, Idaho State Public Defender, Boise, attorney for Appellant. Brian Dickson argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent. Ken Jorgensen argued.

_____

BEVAN, Chief Justice.

After he was convicted of first-degree arson, Melvin Savage filed a post-conviction petition alleging his trial counsel was ineffective for failing to advise him of his right against self-incrimination during a deposition that took place in a civil lawsuit involving the arson allegation. Following an evidentiary hearing, the district court found that counsel's failure to advise Savage of his right to remain silent constituted deficient performance; however, Savage failed to prove he was prejudiced by that deficient performance because he was already intent on resolving his criminal case by entering a guilty plea at the time of the civil deposition. Savage filed a motion to reconsider, which was denied. Savage now appeals to this Court, arguing that the district court erred by limiting its prejudice analysis to an evaluation of whether Savage would have gone to trial instead of considering whether Savage demonstrated that the outcome of the plea process would have been different with competent advice. For the reasons set out, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1

The facts relevant to the issues on appeal are not in dispute. Savage was accused of setting a fire at the home of his ex-wife's divorce attorney, who was coincidentally married to a police officer. While Savage was being detained out of state, he made multiple recorded phone calls to his mother in which he indicated, several times, that his plan was to accept a plea and work to get the case resolved as quickly as possible. Savage was appointed public defender Trent Grant to represent him in the criminal case.

While Grant was representing Savage, the victims of the fire filed a civil lawsuit against Savage. Savage received a subpoena to have his deposition taken in the civil case while his criminal proceedings were ongoing. Savage asked Grant whether he should participate in the deposition or if he could decline to answer questions, to which Grant advised Savage that he could not represent him in the civil matter. It was undisputed that Grant never advised Savage that he (1) had a right to plead the Fifth Amendment in the civil deposition and (2) could refuse to answer incriminating questions. Ultimately, Savage attended the deposition and made several incriminating statements regarding the arson charges that were pending against him. The State received a copy of Savage's civil deposition transcript; however, the prosecutor purportedly did not read it and merely sent it along to Grant.

Some weeks after the deposition, Savage entered a guilty plea in the criminal case in which he agreed to plead guilty to first degree arson and two other misdemeanor charges, and agreed to pay reasonable restitution on all charged and uncharged conduct. In exchange, the State agreed to dismiss the remaining pending misdemeanors and not file additional charges. The plea agreement further provided that the sentencing recommendations were open to both sides, except the State was obliged to recommend concurrent sentences. The district court imposed a unified sentence of nineteen years for arson, with four years fixed, and sentences of one year fixed for each of the misdemeanor offenses to run concurrently with the sentence for arson. Savage filed an Idaho Criminal Rule 35 motion seeking a reduction of his sentence, which the district court granted in part, reducing the indeterminate portion of his sentence by one year.

Savage filed a petition for post-conviction relief asserting a claim of ineffective assistance of counsel due to Grant's failure to adequately advise him of his rights under the Fifth Amendment of the U.S. Constitution and Article I section 13 of the Idaho Constitution. The State filed a motion for summary dismissal, which was granted. Savage appealed to the Idaho Supreme Court, which reversed the order summarily dismissing Savage's petition because, as conceded by the State on

appeal, Savage had articulated a genuine issue of fact with respect to deficient performance, and the district court had not considered the prejudice prong of the analysis as required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Savage v. State*, 166 Idaho 169, 173, 457 P.3d 150, 154 (2020).

On remand, the district court set the matter for an evidentiary hearing. During the hearing, Savage testified that after his deposition, he sat down with Grant and the prosecutor for a meeting, in which the prosecutor essentially said "[t]he deposition transcript is all I need." Grant explained that during that meeting Savage was interested in trying to work out a deal that would look at either probation or a period of retained jurisdiction as a potential resolution, but the prosecutor was not open to those suggestions. Grant testified that the prosecutor's approach was "I've got enough to convict you and lock you up for a long time and so I'm not in any frame of mind to look at community supervision." Grant recalled that the prosecutor brought up photographs of burns on Savage, phone calls between Savage and his mother in which he basically admitted to committing the arson, and asserted the deposition transcript would be admitted no matter what. Later, the prosecutor testified that he spoke to the alleged victim about some admissions made during the deposition, but that he did not review it prior to the meeting and only brought it up during negotiations to try and to make Savage stop "fixating on it." The prosecutor explained Savage was irritated by the deposition and he wanted Savage to stop worrying about it given all the other evidence that would prove Savage's guilt.

The parties continued to try to reach a plea deal after the meeting. Grant explained that he and Savage discussed options of pleading to something other than first-degree arson, but the prosecutor was not amenable to such offers. Grant also noted he and Savage continued to explore the possibility of a deal involving a non-prison sentence, but the prosecutor was not willing to consider supervision in the community or a rider before supervision. Grant also testified that he thought it would have been worthwhile to consult experts to examine some of the State's other evidence, but Savage rejected that advice because he wanted to resolve the case via guilty plea.

Following the evidentiary hearing, the district court concluded Grant had provided deficient performance by not affirmatively advising Savage that he could have invoked his Fifth Amendment rights at his civil deposition. However, the court determined that Savage had not shown prejudice because he had not shown that, but for counsel's deficient performance, he would have rejected the plea offer and insisted on going to trial. Specifically, the district court held that

3

counsel's deficient performance did not prejudice Savage because of the following findings: (1) Savage had decided to plead guilty before the deposition was taken; (2) Savage's refusal to answer some questions in the deposition demonstrated Savage understood he had the right against self-incrimination in the deposition; and (3) because the State's overwhelming evidence of guilt, even disregarding the deposition testimony, showed rejecting the plea agreement would not have been a rational decision. The district court entered a judgment dismissing Savage's petition.

Savage filed a motion for reconsideration. Among other things, Savage argued the district court should have analyzed the prejudice prong under the framework adopted by the U.S. Supreme Court in *Lee v. United States*, 137 S. Ct. 1958 (2017), which held deficient advice that led a petitioner to accept a particular guilty plea was prejudicial even though there was overwhelming evidence against the defendant. Savage alleged "absent the issues with the civil deposition, (or with proper and correct advice regarding this matter) his statement that he would not have plead guilty stand[s]." Savage built on this argument at a subsequent hearing on his motion for reconsideration, presenting additional case law from federal circuits that specifically held, pursuant to *Lee*, prejudice existed if the petitioner showed that, "but for counsel's erroneous advice, he could have negotiated a different plea agreement."

The district court denied Savage's motion to reconsider. The district court disagreed with Savage's claim that *Lee* was the more relevant authority, but stated even if it had relied on *Lee*, the court would have come to the same conclusion. The district court ultimately applied the standard stated in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), which provides that after a defendant has shown ineffective assistance of counsel caused him to accept a guilty plea, that defendant can then show prejudice by "demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." The district court held that Savage had not met that standard at his evidentiary hearing.

Savage filed a timely notice of appeal.

## II. STANDARD OF REVIEW

When reviewing a decision denying a petition for post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. *Cosio-Nava v. State*, 161 Idaho 44, 48, 383 P.3d 1214, 1218 (2016) (quoting *Mitchell v. State*, 132 Idaho 274, 277, 971 P.2d 727, 730 (1998)). The standard at an evidentiary hearing with respect to a claim of ineffective assistance of counsel requires the petitioner to show two

4

things by a preponderance of the evidence: (1) that counsel's performance was objectively deficient; and (2) that the deficient performance prejudiced the petitioner. *Strickland*, 466 U.S. at 687. "A claim of ineffective assistance of counsel presents a mixed question of law and fact." *Booth v. State*, 151 Idaho 612, 617, 262 P.3d 255, 260 (2011) (citing *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992)). "When faced with a mixed question of fact and law, the Court will defer to the district court's factual findings if supported by substantial evidence, but will exercise free review over the application of the relevant law to those facts." *Id.* (citing *Murray*, 121 Idaho at 921–22, 828 P.2d at 1326–27).

"When deciding the motion for reconsideration, the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Fisk v. McDonald*, 167 Idaho 870, 892, 477 P.3d 924, 946 (2020). "Likewise, when reviewing a trial court's decision to grant or deny a motion for reconsideration, this Court utilizes the same standard of review used by the lower court in deciding the motion for reconsideration." *Id.*

### III. ANALYSIS

The State does not contest the district court's holding that Grant's performance was deficient. Thus, the only issue on appeal is whether Savage proved by a preponderance of the evidence that Grant's deficient performance was prejudicial. *See Strickland*, 466 U.S. at 687. A defendant is entitled to "the effective assistance of competent counsel" in considering a plea deal. *Icanovic v. State*, 159 Idaho 524, 529, 363 P.3d 365, 370 (2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010)). To prove that counsel's deficient performance prejudiced the defendant, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dunlap v. State*, 159 Idaho 280, 297, 360 P.3d 289, 306 (2015) (quoting *Strickland*, 466 U.S. at 694). As we held in *Icanovic* regarding the standard applicable here:

> To establish prejudice resulting from his or her attorney's performance, a defendant must show "that as a result of counsel's deficient performance 'there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial.' " *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed.2d 203, 210 (1985)). Such a defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S. Ct. at 1485, 176 L. Ed.2d at 297–98.

*Id.* at 529–30, 363 P.3d at 370–71.

Relying on *Icanovic*, the district court held that Savage failed to prove, by a preponderance of the evidence, that he would have insisted on going to trial rather than take a plea deal, and, that rejecting the plea bargain would *not* have been a rational decision under the circumstances. The district court made three key findings.

First, the court found that Savage made it quite clear, very early on in his case, that his intent was to plead guilty as soon as he could, so that he could put the case behind him and begin to move on with his life. The district court considered the phone calls between Savage and his mother to be compelling evidence of his intent to accept responsibility and plead guilty.

Second, the court recognized it was clear that Savage did not want to participate in the civil deposition, and that his attorney failed to effectively advise him of his rights; however, the court concluded that failure did not necessarily mislead Savage into believing that he had to answer questions in the deposition. For example, although Savage did answer some incriminating questions, he refused to answer others. Thus, notwithstanding his attorney's lack of counsel, Savage knew he could, and did, refuse to answer some questions.

Last, the district court determined that Savage failed to prove that it would have been rational for him to reject the plea agreement and move forward with trial. The court found the State had put forth substantial evidence of guilt that would have been presented if Savage's case had gone to trial:

> The circumstances of the arson charge were that gasoline was poured into a window well then lit on fire. Evidence tying Savage to the crime included, but was not limited to, the police investigation identifying Savage as the suspect, the jail phone conversations between Savage and his mother containing incriminating admissions, video evidence of Savage filling up a gas can at a Maverick gas station shortly before [the victim's] home was lit on fire, photographs of the crime scene incriminating Savage, photos of burns on Savage's body acquired contemporaneously with the arson, Savage's clothing with gasoline residue, tire and shoe treads matching Savage's vehicle and shoes, respectively, and the contents of his car at the time in question.

The district court additionally noted that Savage did not put forth any rebuttal evidence that would exonerate him, or that would contradict the State's evidence. The court concluded if Savage's case had gone to trial, a reasonable jury would have found Savage guilty, thus, it would not have been a rational decision to refuse a plea agreement and go to trial.

In his motion to reconsider, Savage argued the case should be analyzed pursuant to the standard articulated in *Lee v. United States*, 137 S. Ct. 1958 (2017), rather than *Icanovic*, 159 Idaho at 529, 363 P.3d at 370, (quoted above) as the district court had originally done. Specifically, Savage relied on the Supreme Court's conclusion that counsel's deficient advice which led the petitioner to accept a particular guilty plea was still prejudicial despite overwhelming evidence of the petitioner's guilt. Savage argued Grant's deficient performance was still prejudicial because it affected his decision-making in the plea process despite the other evidence the State had against him. Savage also disputed the court's reliance on the conversations with his mother because those took place before he had been appointed counsel, thus, they occurred before any discussion of his legal options. Savage claimed that although he considered his desire to protect family and friends in accepting the plea deal in the criminal case, it was ultimately the deposition testimony (and the weight it was given by Grant and the State) that convinced him that he must plead guilty to avoid trial.

The district court denied Savage's motion to reconsider. First, the district court disagreed with Savage's claim that it had placed undue weight on the jail phone calls Savage had with his mother, finding that "[w]hile it is true that those phone calls were made by Savage before he had been assigned counsel or consulted with counsel on this case, the [c]ourt still believes that the phone calls are particularly probative and persuasive as to his intentions and his state of mind immediately following his arrest." Savage has not challenged this aspect of the district court's denial of his motion to reconsider on appeal. Instead, Savage focuses on the district court's alleged disregard of the standards articulated in *Lee*. The district court disagreed with Savage's claim that *Lee* was the more relevant authority, but stated that even if it had relied on *Lee*, the court would have come to the same conclusion. The district court ultimately applied the standard stated in *Hill v. Lockhart*, reiterated in both *Icanovic,* 159 Idaho at 529, 363 P.3d at 370, and *Lee*, 137 S. Ct. at 1965, that, after a defendant has shown ineffective assistance of counsel caused him to accept a guilty plea, that defendant must then show prejudice by "demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The district court held that Savage did not meet that standard at his evidentiary hearing.

On appeal, Savage argues that in denying his motion to reconsider, the district court did not evaluate the prejudice prong with respect to the standard articulated by the United States

7

Supreme Court in *Lee*, i.e., the impact of counsel's deficient performance on his decision to accept the plea deal, particularly as it related to Savage's ability to try and negotiate a different plea. Savage maintains there was sufficient evidence to prove prejudice given his fixation on the deposition during plea negotiations. Savage's view of *Lee* is misplaced because the facts are distinguishable from those of Savage's case. *Lee* does not supplant the requirement that "[t]o establish prejudice resulting from his or her attorney's performance, a defendant must show that as a result of counsel's deficient performance there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial." *Icanovic*, 159 Idaho at 529, 363 P.3d at 370.

In *Lee*, the defendant pleaded guilty to a felony without knowing that it would lead to mandatory deportation. 137 S. Ct. at 1962. Lee filed a motion for post-conviction relief, asserting that even though he had no real defense if the case proceeded to trial, he never would have accepted a plea if he knew it would result in deportation. *Id*. It was undisputed that Lee's counsel provided inadequate representation by assuring Lee he would not be deported if he pleaded guilty; thus, the only consideration was whether Lee could show he was prejudiced by the erroneous advice. *Id*. at 1965.

The Supreme Court recognized that "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain. That is because, while we ordinarily 'apply a strong presumption of reliability to judicial proceedings,' 'we cannot accord' any such presumption 'to judicial proceedings that never took place.' " *Id*. at 1965 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 482–483 (2000)). Instead, the Court considers whether the defendant was prejudiced by the "denial of the entire judicial proceeding . . . to which he had a right." *Id*. (quoting *Flores-Ortega*, 528 U.S. at 483). Even so, while reviewing an alleged denial of the entire judicial proceeding, the *Hill v. Lockhart* standard as reiterated in *Icanovic* remains the focus: "To establish prejudice resulting from his or her attorney's performance, a defendant must show "that as a result of counsel's deficient performance 'there is a reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial.' " *Lee*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59). Thus, while the Supreme Court in *Lee* reiterated that the focus of the inquiry centers on the defendant's perspective during the plea negotiations, not the likelihood of success at trial, 137 S.

8

Ct. at 1966, that perspective must still lead the reviewing court to conclude that the prejudice standard has been met. This is evidenced by reviewing the facts of *Lee*.

Lee alleged that avoiding deportation was the determinative factor for him, stating he would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial. *Id*. at 1967. The Supreme Court rejected the Government's claim that it would have been irrational for a defendant in Lee's position to reject the plea offer in favor of trial, explaining: "But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly." *Id*. at 1968 (emphasis in original). Thus, "[i]f deportation were the determinative factor for an individual in plea discussions, as it was for Lee; if that individual had strong connections to this country and no other, as did Lee; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that 'almost' could make all the difference." *Id*. at 1968–69. The Supreme Court concluded that Lee had shown prejudice from his counsel's deficient performance. *Id*. at 1969.

Savage cites several federal court decisions that have interpreted *Lee* to mean that a petitioner can show prejudice under *Strickland* by showing that, but for counsel's deficient performance, he would have tried to negotiate a better or different plea deal. For example, the Sixth Circuit has explained that there are two ways in which the outcome of the plea process could be different in that context: (1) the petitioner could reject that plea deal and decide to stand on his right to a trial; *or* (2) the petitioner could reject that plea deal and seek to negotiate a more favorable plea deal. *Rodriguez-Penton v. United States*, 905 F.3d 481, 488–89 (6th Cir. 2018) (emphasis added by Savage). Similarly, the Fourth Circuit noted that a petitioner's "single-minded focus" on one issue—removing adverse immigration consequences—during the plea negotiations demonstrated counsel's failure to inform him that the negotiated plea still carried immigration consequences was prejudicial because "but for his counsel's erroneous advice, he could have negotiated a different plea agreement." *United States v. Swaby*, 855 F.3d 233, 242–43 (4th Cir. 2017); *see also United States v. Rodriguez-Vega*, 797 F.3d 781, 788 (9th Cir. 2015) (citation omitted) ("Where ineffective assistance leads a petitioner to accept a plea bargain, a different result means that "but for counsel's errors, [the petitioner] would either have gone to trial or received a better plea bargain.").

Thus, Savage argues that the prejudice inquiry is not constrained to whether the defendant would have insisted on going to trial but for counsel's errors, but, it can also consider whether the defendant would have tried to negotiate a better plea deal. (Citing *Rodriguez-Penton*, 905 F.3d at 488 (a petitioner can show prejudice under *Lee* by showing that "if properly advised, he would have gone to trial *or his decisionmaking [sic] process would have been different*" with respect to the plea) (emphasis added by Savage). Idaho courts have previously recognized as much, explaining that to establish prejudice "the petitioner must show that counsel's deficient performance 'affected the outcome of the plea process.' " *Cosio-Nava v. State*, 161 Idaho 44, 48, 383 P.3d 1214, 1218 (2016) (quoting *Hill*, 474 U.S. at 59); *see also Fortin v. State*, 160 Idaho 437, 446, 374 P.3d 600, 609 (Ct. App. 2016) (citing *Lafler v. Cooper*, 566 U.S. 156 (2012) ("to establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the plea process would have been different with competent advice.").

In *Booth v. State*, the Court concluded Booth's counsel was ineffective for advising Booth that if he went to trial he would face a mandatory life sentence based on counsel's erroneous reading of the sentencing statutes. 151 Idaho 612, 620, 262 P.3d 255, 263 (2011). The State argued that the deficient performance was not prejudicial because even if Booth had insisted on going to trial, he would have been subjected to the same penalty as when he pleaded guilty. *Id*. This Court determined the State's arguments erroneously focused on the outcome of the case, specifically whether Booth's sentence would have been any different if he had been convicted following a trial; when the relevant inquiry was whether, but for the attorney's errors, Booth would not have pleaded guilty and would have insisted on going to trial. *Id*. at 622, 262 P.3d at 265 (citing *Ridgley v. State*, 148 Idaho 671, 676, 227 P.3d 925, 930 (2010)). The Court held our focus must remain on "the defendant's state of mind when choosing to plead guilty." *Id*. (quoting *McKeeth v. State*, 140 Idaho 847, 103 P.3d 460 (2004)).

In *McKeeth*, the defendant entered a conditional plea, and after a successful appeal, three of six charges were dismissed. 140 Idaho at 849, 103 P.3d at 462. However, due to counsel's error in crafting the plea agreement, he could not withdraw his guilty pleas to the remaining charges on remand. *Id*. The State argued that the deficient performance was not prejudicial because there had been no showing that McKeeth had a reasonable probability of prevailing at trial on the remaining charges if he had been allowed to withdraw those pleas. *Id*. at 852, 103 P.3d at 465. This Court rejected that argument, holding that "the likelihood that without counsel's errors a defendant may

10

or may not have been able to prevail at trial is relevant only to the extent it sheds light on the defendant's state of mind when he pleaded guilty." *Id*. The Court explained that the proper analysis under *Hill* "does not concern itself with the State's intent or understanding, focusing instead on the defendant's state of mind when choosing to plead guilty." *Id*. at 853, 103 P.3d at 466.

Savage cites this authority to claim there was substantial evidence indicating that Grant's deficient performance was prejudicial. It is undisputed that Savage did not want to participate in the deposition, and that but for Grant's deficient advice, Savage could have avoided participating in that deposition altogether. Savage argues this is important because, as the prosecutor himself admitted, Savage was focused, almost singularly so, on the deposition during their plea negotiations. Savage contends this showing of prejudice is reinforced by an evaluation of the plea deal itself, which called for Savage to plead guilty to first-degree arson without any restriction on the length of sentence the prosecutor could ask for or the district court could impose. The only benefit was that some of the misdemeanor charges against him were dismissed and the State recommended the sentences on the remaining charges run concurrently. Savage contends that it would have been reasonable to reject that minimally-beneficial plea deal and try and negotiate a better deal if he did not have to contend with the additional admissible evidence against him, which was only available because of counsel's deficient performance. We reject Savage's effort to view his decision to plead guilty – and the outcome – through the lens of hindsight. *See Lee*, 137 S. Ct. at 1967 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.")

The State argues that there is simply no evidence in the record to support Savage's claim that, but for counsel's deficient performance a different, more favorable plea agreement would have been reached. In support, the State cites *Cosio-Nava*, 161 Idaho 44, 383 P.3d 1214. In *Cosio-Nava*, the petitioner asserted his counsel was ineffective for failing to adequately advise him of the immigration consequences that accompanied a guilty plea. However, this Court affirmed the district court's dismissal of Cosio-Nava's petition for post-conviction relief because he failed to cite to any evidence presented to the district court tending to show that an outcome not involving his removal from the United States was likely or even possible. *Id*. at 49, 383 P.3d at 1219. This statement in *Cosio-Nava* is inconsistent with *Lee*. A petitioner can establish prejudice by showing that his decision to not negotiate for a different plea would have been altered even if his hope of

11

achieving a different outcome – in this limited context, a different plea agreement – was implausible (i.e., not realistic). *See Lee* 137 S. Ct. at 1968–69. To the extent *Cosio-Nava* imposes a higher standard, it is abrogated.

That said, Savage failed to meet his burden of proving that, but for counsel's advice regarding the deposition, the plea negotiations would have produced a different result – either at trial or through a more favorable agreement. There is no evidence in the record that the plea agreement changed based on the deposition. Evidence presented at the evidentiary hearing showed that Grant approached the prosecution about a recommendation of probation or a rider, but the prosecutor rejected those suggestions. There is no evidence that the deposition was the reason that the prosecutor did not contemplate a more lenient plea deal. Rather, the prosecutor testified that he only brought up the deposition during negotiations so Savage would stop "fixating on it" given all the other evidence that could prove Savage's guilt.

Ultimately, the crux of the issue is the effect of counsel's deficient performance. In the cases highlighted above, counsel's deficient advice had a direct impact on a *consequence* associated with the defendant's decision to plead guilty. For example, in *Lee*, the defendant was seeking to avoid deportation, "a particularly severe penalty," *see Padilla v. Kentucky*, 559 U.S. 356, 365 (2010), and pleaded guilty based on his counsel's assurance that he would not be deported if he pleaded guilty. 137 S. Ct. at 1963. The Supreme Court held that despite the fact that Lee's prospects of an acquittal at trial were grim, his attorney's error had nothing to do with trial; rather, the error was one that affected Lee's understanding of the consequences of pleading guilty. *Id*. Similarly, in *Booth* and *McKeeth*, the attorneys' deficient advice related directly to the defendants' understanding of the actual sentencing. In those situations, the defendants testified they would have rejected the plea agreements had they received accurate information concerning the consequences of pleading guilty. *Booth*, 151 Idaho at 621, 262 P.3d at 264 ("but for [counsel's] erroneous advice regarding the possibility of a fixed life sentence, Booth would have elected to proceed to trial."); *McKeeth*, 140 Idaho at 853, 103 P.3d at 466 ("But for his counsel's errors, McKeeth would not have pleaded guilty and would have proceeded to trial.").

Conversely here, while Grant's deficient performance allowed the prosecutor access to additional evidence that could be introduced at trial, it did not impact Savage's understanding of the plea agreement or give rise to an unknown consequence of the plea agreement. Still, Savage contends that but for his counsel's deficient performance, there would have been less admissible

12

evidence for Savage to evaluate with respect to the decision of whether to plead guilty or go to trial, which would have affected his decision-making in how to negotiate the plea deal in this case. However, showing that the State would have had less admissible evidence to admit at trial is, standing alone, insufficient to meet the burden of proving a reasonable probability that, but for counsel's unprofessional errors, the result of the plea negotiations would have been different. And Savage has no additional facts on which to rely.

Also, in *Lee*, the Supreme Court recognized a point made by the dissent that a defendant must still show that he would have been better off going to trial. The Court noted "[t]hat is true when the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress an improperly obtained confession." *See id*., 137 S. Ct. at 1965 (citing *Premo v. Moore*, 562 U.S. 115, 118 (2011)). Savage's claimed error fits within this box. The relief provided in *Lee* was based on an error "that affected Lee's understanding of the consequences of pleading guilty." 137 S. Ct. at 1965. Nothing about Savage's complaint had to do with his understanding of the potential consequences for pleading guilty. Although the focus on Savage's state of mind is paramount, it is not viewed in a vacuum. A defendant's subjective belief he could have received a better deal is not sufficient without evidence to support it. Ultimately, Grant's deficient advice had an impact on an additional piece of admissible evidence if the case went to trial, not one that affected Savage's understanding of the consequences of pleading guilty. *See Lee*, 137 S. Ct. at 1965.

Last, Savage takes issue with the district court's conclusion, restated by the State on appeal, that because Savage cut off some questioning during the civil deposition, he understood his right to not be compelled to give incriminating testimony "notwithstanding" his counsel's failure to so advise him. Indeed, when the full context is considered, the deposition transcript does not support the conclusion that Savage's temporary refusals to answer questions were indicative of a belief that, despite Grant's deficient advice on that point, he could rely on the Fifth Amendment to avoid answering incriminating questions.

For example, when Savage initially told the attorney conducting the deposition, "I'm done" and "I'm not answering any more questions," the plaintiffs' attorney responded by informing Savage that he could not actually refuse to answer the questions: "Let me represent to you, at some point if you refuse, I can get a court order to force you to comply with some of the questions, so -

13

- at your expense, so I'd rather finish up today if you'd be willing to do that." Savage then went on to answer incriminating questions. In addition, the following exchange took place at the end of the deposition:

> Q. So the first [gas] can was intended for Ms. Gaffney's house, wasn't it? You
>
> filled it up with the intent of going there?
>
> A. I had no intent. It just happened.
>
> Q. I'm sorry. You filled up the gas can –
>
> A. I said I'm done.
>
> Q. I'm sorry. I can't hear you.
>
> A. I'm done.

As suggested by Savage, the full context of that statement does not support the conclusion that Savage believed, despite counsel's deficient advice, he could rely on the Fifth Amendment to avoid giving incriminating answers, particularly when he had already answered the incriminating question. That said, this argument pertains to whether Grant was ineffective, which is not at issue on appeal. It is undisputed that Savage did not want to participate in the civil deposition and he made incriminating statements due to Grant's deficient advice. However, that does not prove that Savage was prejudiced by the deficient performance. Ultimately, the district court focused on the evidence that showed that Savage intended to plead guilty after he was arrested and found the State had overwhelming admissible evidence of Savage's guilt, independent of the deposition. Savage failed to show error in the district court's determination that there was no reasonable probability of a different outcome but for Grant's deficient performance. The district court's decision denying post-conviction relief is affirmed.

## IV. CONCLUSION

We affirm the district court's decision denying Savage's petition for post-conviction relief.

Justices BRODY, STEGNER, and ZAHN **CONCUR**.

MOELLER, J., concurring.

I concur with the majority's result and reasoning in this matter. However, I feel compelled to write separately to highlight my own concerns due to the uniquely disturbing circumstances of this case.

By declining to advise Savage as to whether he should comply with a subpoena to testify in a civil deposition regarding the same subject matter as his pending criminal case, Savage was essentially abandoned by his attorney when he needed him most. His attorney's failure to advise him of his Fifth Amendment right to refuse to answer incriminating questions in a civil deposition resulted in Savage attending his deposition, where he made highly incriminating statements concerning his pending arson charges. Not even the State disputes the district court's conclusion that the representation Savage received from his court-appointed counsel was deficient.

Ultimately, the majority concludes, as did the district court, that although his trial counsel's conduct was deficient under the first prong of *Strickland v. Washington*, 466 U.S. 668 (1984), Savage failed to establish prejudice under its second prong. Savage attempted to show prejudice by asserting that he would not have accepted the plea deal offered by the State if the State had not possessed the significant negotiating leverage the incriminating deposition gave it. Yet, Savage does not contend that he actually ever intended to go to trial. The district court concluded, and the majority ultimately agreed, that Savage's claim for post-conviction relief failed because the evidence supported the conclusion that: (1) he had decided to plead guilty before the deposition was taken; (2) his refusal to answer some questions in the deposition demonstrated he understood, and asserted, his right against self-incrimination at times during the deposition; and (3) the State's overwhelming evidence of guilt, even disregarding the incriminating deposition testimony, showed that rejecting the plea agreement would not have been a rational decision. Therefore, the majority concludes that "Savage failed to show error in the district court's determination that there was no reasonable probability of a different outcome but for [trial counsel's] deficient performance."

Despite my misgiving, ultimately I cannot disagree with these conclusions. Frankly, the sheer amount and highly inculpatory nature of the evidence assembled by the State made it unlikely that Savage would have been acquitted or that he would have received any better offer from the State. Additionally, given the horrific actions of Savage, it is unlikely that a judge would have agreed to a plea agreement binding the court to anything less than a prison sentence. Savage's actions were more than just an attack on a random residence—they were an attack on the home of his ex-wife's divorce attorney, her police officer husband, and, in many ways, an attack on the legal system itself. Nevertheless, I write separately only to observe that the majority's holding, which I have joined, should not be seen as somehow creating a safe-harbor for future cases of

ineffective assistance of counsel. Indeed, but for Savage's failure to demonstrate *any* prejudice, it is unlikely that we would ever countenance such deficient performance, or find it non-prejudicial.

It is also worth noting that such grossly deficient performance by trial counsel, even if not demonstrably prejudicial under *Strickland*, is inconsistent with the oath every attorney takes on admission to the Idaho State Bar to "represent [their] clients with vigor and zeal." The Preamble to the Idaho Rules of Professional Conduct states, "[a]s advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. As advocate, a lawyer zealously asserts the client's position under the rules of the adversary system." I.R.P.C., Preamble, § 2. Likewise, the Comments to Rule 1.3, which concerns "diligence," states:

> A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.

*Id*., Rule 1.3, Comment 1. Furthermore, when acting as a public defender, "[a]n appointed lawyer has the same obligations to the client as retained counsel, including the obligations of loyalty …" *Id*., Rule 6.2, Comment 3. These rules are not merely aspirational—they are duties applicable to every attorney in Idaho. In my view, this was anything but a zealous defense. Defense counsel fell far short of living up to the most basic of his professional responsibilities.

In sum, while I concur in the result, it remains vexing to me because Savage should never have been allowed to participate in that deposition without his attorney *at least* arming him with the knowledge of his constitutional right against self-incrimination. While I agree that prejudice was not sufficiently demonstrated by the record in this case, it would be most disappointing to learn that such an egregious failure of representation ever occurred again in Idaho.