JANE B. STRANCH, Circuit Judge.
*484 Petitioner Daynel L. Rodriguez-Penton, a lawful permanent resident from Cuba, appeals the district court's denial of his motion to vacate his sentence under 28 U.S.C. § 2255. He argues that his counsel performed deficiently by failing to warn him of the adverse immigration consequences of pleading guilty and that he was prejudiced by this failure. The district court denied his motion, relying on the standard for ineffective assistance of counsel claims set forth in Hill v. Lockhart , 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). But the legal landscape for such claims has changed in material ways since Hill , especially in the context of non-citizens faced with criminal charges. Because the district court applied the wrong analytical framework, we REVERSE and REMAND for further proceedings consistent with this opinion.
I. BACKGROUND
Rodriguez-Penton, now twenty-nine years old, moved from Cuba to the United States with his parents when he was fifteen. He has lived in Louisville, Kentucky since his arrival and is a permanent resident in possession of a green card. In 2011, the Government indicted Rodriguez-Penton and his parents on a single count of conspiracy to distribute and possess Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). The Government dismissed the charges against Rodriguez-Penton's parents approximately six months after indictment.
Rodriguez-Penton was detained pending trial and represented by retained counsel William M. Butler. Rodriguez-Penton cooperated with the Government at first, but eventually stopped, in large part because he feared for his family's safety. The Government offered Rodriguez-Penton at least two separate plea deals in the year after his arrest, including one verbal offer and one written offer for a six-year sentence. Rodriguez-Penton eventually moved for re-arraignment. At the re-arraignment hearing in October 2012, he entered an open guilty plea to the single charge in the indictment.
Rodriguez-Penton's Cuban citizenship arose at three points during the plea hearing. First, when Rodriguez-Penton mentioned his Cuban citizenship, the district court responded that there was no need to review the civil rights one forfeits by pleading guilty because they did not apply to non-citizens. Second, the district court inquired whether, due to Rodriguez-Penton's citizenship, there would be an early sentencing. The parties answered in the negative. Third, when asking about releasing Rodriguez-Penton from custody pending trial, the district court asked if "there is any legal reason your client should be released from custody, or is there an [Immigration and Customs Enforcement] detainer on him?" Butler responded "no,"
*485 although it is not clear whether he was saying no legal reason existed or no detainer existed. At no point during the plea hearing did the district court advise Rodriguez-Penton that pleading guilty might have adverse immigration consequences.
In March 2013, the district court sentenced Rodriguez-Penton to a prison term of 121 months, to be followed by four years of supervised release.[1] The sentencing court mentioned that it did not know "if this conviction would result in deportation" when discussing the supervised release portion of Rodriguez-Penton's sentence. Rodriguez-Penton alleges that he was unaware of the risk of deportation until after sentencing. He learned of the risk when he had his "first appointment" with his prison counselor, who gave him "a sheet of paper where it said that [he] could possibly be deported."[2]
Rodriguez-Penton filed a direct appeal while still represented by Butler in which he argued that his guilty plea was not knowing and voluntary because the district court failed to advise him of the risk of deportation. He also argued that the evidence did not support the drug quantities attributed to him at sentencing. This court rejected both arguments. United States v. Rodriguez-Penton , 547 F. App'x 738 (6th Cir. 2013).
Rodriguez-Penton then filed a § 2255 motion to vacate, set aside, or correct his sentence. The district court eventually appointed counsel and a magistrate judge scheduled an evidentiary hearing where Rodriguez-Penton and Butler both testified. Butler estimated that he met with Rodriguez-Penton fifteen times during the year between Rodriguez-Penton's arrest and plea, although Rodriguez-Penton said they met closer to ten times. Because Rodriguez-Penton does not speak English, a Spanish interpreter was present during the majority of these meetings. An interpreter was also present at all relevant hearings.
Based on the testimony and oral argument at the evidentiary hearing, the magistrate judge issued Findings of Fact and Conclusions of Law. The magistrate judge described Butler's performance as follows: "[H]e merely told Rodriguez-Penton that, based on Butler's own experience, and what several immigration attorneys had told Butler, [Rodriguez-]Penton did not have to worry about deportation because the Government would not return him to Cuba." The record confirms that Butler was not alone in reaching this conclusion-the Government also noted that Cuban defendants are rarely subject to deportation. Yet neither Butler nor the Government cited any authority in support of this position. The magistrate judge then noted that "Butler conceded on cross-examination that he did not recall ever telling Rodriguez-Penton that deportation nonetheless was a possibility." This differed *486 from Rodriguez-Penton's testimony that Butler "never discussed the subject of deportation, nor did they ever discuss the impact of his status as a Cuban national lawfully present in the United States."
Rather than reconcile the conflicting testimony, the magistrate judge presumed "to the benefit of Rodriguez-Penton that attorney Butler's performance was deficient." He concluded that Rodriguez-Penton's claim of ineffective assistance of counsel failed on the prejudice prong because Rodriguez-Penton testified unequivocally that he "would not have gone to trial, even if he could not have negotiated a better plea arrangement than the open plea of guilty that he previously chose to enter." Absent a showing of prejudice, the magistrate judge held, Rodriguez-Penton could not prevail on his § 2255 petition. The district court adopted the magistrate judge's findings over Rodriguez-Penton's objections, denied the § 2255 motion, and dismissed the case with prejudice.
Rodriguez-Penton filed a timely notice of appeal and moved this court for a Certificate of Appealability (COA). This court granted his request after finding that "Rodriguez-Penton has arguably made a substantial showing that his attorney's performance was deficient and that he was actually prejudiced by counsel's alleged error." More specifically, the COA stated:
Rodriguez-Penton has arguably shown that, had he been advised that he could be deported, he might have accepted a similar plea offer especially if it contained a non-deportation clause, particularly in light of the prosecutor's acknowledgement that citizens of Cuba are generally not deported following a guilty plea. Therefore, Rodriguez-Penton has made a substantial showing that counsel's error prejudiced him because, even though he insisted on not going to trial, the error may have affected the outcome of the plea process.
With this background in mind, we turn to Rodriguez-Penton's arguments on appeal.[3]
II. ANALYSIS
A. Standard of Review
This court reviews a district court's denial of a § 2255 motion de novo. Short v. United States , 471 F.3d 686, 691 (6th Cir. 2006). The reviewing court "will accept the district court's factual findings unless they are clearly erroneous." McPhearson v. United States , 675 F.3d 553, 558 (6th Cir. 2012). The de novo review standard also applies to a claim of ineffective assistance of counsel, which is a mixed question of law and fact. Id. at 559.
B. Ineffective Assistance of Counsel
The basic contours of ineffective-assistance-of-counsel claims are well defined. To prevail on a claim that he was denied effective assistance, Rodriguez-Penton must meet the two-part test established in Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and subsequently tailored to the guilty-plea context, see Lafler v. Cooper , 566 U.S. 156, 162-63, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). "The performance prong of Strickland requires a defendant to show that counsel's representation fell below an objective standard of reasonableness." Id. at 163, 132 S.Ct. 1376 (citation and internal quotation marks omitted). The prejudice prong requires a defendant to show that there is a reasonable probability *487 the outcome of the plea process would have been different had he received competent advice. Id.
Here, the district court assumed deficient performance, and rightly so. Under either version of the facts, that of Butler or that of Rodriguez-Penton, Butler's conduct was objectively unreasonable. Counsel has an obligation to "advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Padilla v. Kentucky , 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (footnote omitted). This obligation is not met if counsel either fails to mention the risk of deportation or specifically discounts such a risk. See id. at 359, 368-69, 130 S.Ct. 1473 (noting that Padilla's counsel told him he did "not have to worry about immigration status since he had been in the country so long," and finding that advice to be deficient); see also Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017) ("The Government concedes that Lee's plea-stage counsel provided inadequate representation when he assured Lee that he would not be deported if he pleaded guilty."). We therefore agree that counsel's performance was deficient.
The district court's resolution of Strickland 's prejudice prong, however, requires more attention. The prejudice inquiry asks whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland , 466 U.S. at 694, 104 S.Ct. 2052. In answering this inquiry in the negative, the district court relied on Hill v. Lockhart , 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and its progeny. Hill extended Sixth Amendment ineffective-assistance-of-counsel claims to the guilty-plea context, but held that Strickland prejudice requires a showing of "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S.Ct. 366.
Recent Supreme Court authority has expanded Hill 's holding in material ways. In Missouri v. Frye , the Supreme Court considered how to address prejudice where "[t]he challenge [wa]s not to the advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers." 566 U.S. 134, 141-42, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). Frye held that, "[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id. at 147, 132 S.Ct. 1399. Specifically distinguishing Hill , the Supreme Court explained that " Hill was correctly decided and applies in the context in which it arose. Hill does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." Id. at 148, 132 S.Ct. 1399. Frye thus clarified that individuals who allege ineffective assistance of counsel during the plea process may satisfy the prejudice prong even without a showing that they would have gone to trial were it not for counsel's deficient performance.
Since Frye , Supreme Court authority and some persuasive caselaw from our sister circuits have further illuminated how to demonstrate prejudice in the guilty-plea context, and specifically as it relates to adverse immigration consequences. Lee , for example, is instructive.
*488 Although that case, like Hill , involved a defendant who claimed that counsel's deficient performance deprived him of the opportunity to proceed to trial, the Supreme Court nevertheless confirmed that a defendant may be prejudiced when his counsel's errors deprived him of the opportunity to make a fully informed choice during the plea process: "[W]here we are instead asking what an individual defendant would have done, the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking." 137 S.Ct. at 1967 (footnote omitted). Lee therefore indicates that prejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermines confidence in the outcome of the plea process. Id.
One question left open by Lee and raised by Petitioner is whether Rodriguez-Penton may demonstrate a reasonable probability of a different outcome by showing that he would have negotiated a plea deal that did not carry adverse immigration consequences. See id. at 1966 n.2 ("Lee also argues that he can show prejudice because, had his attorney advised him that he would be deported if he accepted the Government's plea offer, he would have bargained for a plea deal that did not result in certain deportation. Given our conclusion that Lee can show prejudice based on the reasonable probability that he would have gone to trial, we need not reach this argument."). The five circuits that have addressed this question have all concluded that such a showing would satisfy Strickland 's prejudice prong. See, e.g. , United States v. Aguiar , 894 F.3d 351, 362 (D.C. Cir. 2018) (remanding for an evidentiary hearing on prejudice and noting that "[t]he Supreme Court did not suggest in Lee that a defendant must hypothesize his counsel's advice might be erroneous and state contemporaneously that his plea decision would differ if that were so"); United States v. Swaby , 855 F.3d 233, 243 (4th Cir. 2017) ("Swaby has demonstrated a reasonable likelihood that, but for his counsel's erroneous advice, he could have negotiated a different plea agreement. As a result, [counsel]'s deficient performance prejudiced Swaby's defense."); United States v. Rodriguez-Vega , 797 F.3d 781, 788 (9th Cir. 2015) ("A petitioner may demonstrate that there existed a reasonable probability of negotiating a better plea by identifying cases indicating a willingness by the government to permit defendants charged with the same or a substantially similar crime to plead guilty to a non-removable offense."); DeBartolo v. United States , 790 F.3d 775, 779 (7th Cir. 2015) (noting that the petitioner "could have tried to negotiate a different plea deal for an offense that does not make deportation mandatory"); Kovacs v. United States , 744 F.3d 44, 52 (2d Cir. 2014) ("[A] petitioner must therefore demonstrate a reasonable probability that the prosecution would have accepted, and the court would have approved, a deal that had no adverse effect on the petitioner's immigration status.").
We find the logic of these opinions sound, and we now likewise hold that Rodriguez-Penton may demonstrate prejudice if he can show that, had he known about the risk of adverse immigration consequences, he would have bargained for a more favorable plea. Rodriguez-Penton may make this showing in any number of ways, such as by showing similar plea agreements that were reached by others charged with the same crime. See Rodriguez-Vega , 797 F.3d at 788. And, under Lee , he can still show prejudice by demonstrating that, if properly advised, he would have gone to trial or his decisionmaking process would have been different. 137 S.Ct. at 1967. But no matter the route he *489 takes, Rodriguez-Penton must still end up at the same place: he must present evidence sufficient to undermine confidence in the outcome of the plea-negotiation process. Cf. id. (cautioning against relying on "post hoc assertions" about how a defendant would have pleaded).
Because the district court looked only to Hill , it applied an incomplete analytical framework to Rodriguez-Penton's prejudice arguments. For a case like this one-where a criminal defendant risks deportation by pleading guilty and his counsel fails to so advise him- Hill does not encompass all the methods of satisfying Strickland 's prejudice prong. In light of the legal developments since Hill and today's holding, we think a remand for additional proceedings is appropriate. See Rodriguez v. United States , 730 F. App'x 39, 44 (2d Cir. 2018) (remanding to "the district court to develop a fuller record concerning the issue of prejudice" after noting that, "[o]n the present record and under the circumstances, we cannot determine whether Rodriguez would have opted to defend against the charges had she known she could be denaturalized").
The dissent incorrectly concludes that today's opinion "announces a new right" to plea bargaining-a right that it suggests transforms "plea bargaining into an absolute entitlement." (Dissenting Op. at 490, 495) To the contrary, the constitutional right at issue in this case is not some newly minted right to plea bargaining: it is the long-recognized right to effective assistance of counsel. And the Supreme Court has told us that the right to effective assistance extends to the plea-bargaining process notwithstanding the fact that defendants have no constitutional right to a plea offer. In Frye , the Court rejected both the Government's claim that Frye "was not deprived of any legal benefit" because "there is no right to a plea offer or a plea bargain in any event," and its conclusion that "any wrongful or mistaken action of counsel with respect to earlier plea offers is beside the point." 566 U.S. at 142, 132 S.Ct. 1399. Because our criminal justice system is effectively "a system of pleas, not a system of trials," the Court found it "insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process." Id. at 143-44, 132 S.Ct. 1399 (quoting Lafler , 566 U.S. at 170, 132 S.Ct. 1376 ). In the context of the right to effective assistance of counsel, Lafler concludes that it is the absence of a right to be offered a plea or to have it accepted that is beside the point. The Court found that true because "[m]uch the same reasoning guides cases that find criminal defendants have a right to effective assistance of counsel in direct appeals even though the Constitution does not require States to provide a system of appellate review at all." Lafler , 566 U.S. at 168, 132 S.Ct. 1376 (citing Evitts v. Lucey , 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ).
Today's decision no more announces a right to plea bargaining than Frye or Lafler announced such a right. In those cases, as in this one, the right at issue is the right to effective assistance of counsel at all critical stages of the criminal process. Of course, if the Government exercises its discretion not to bargain for a guilty plea, no constitutional question is presented. But when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process. See id. ("[W]hen a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution." (quoting Evitts , 469 U.S. at 401, 105 S.Ct. 830 ) ). And where counsel's assistance falls short, as here, at *490 issue is whether the defendant can show a reasonable probability that, with proper advice, the outcome of those negotiations would have been different. The purpose of remand is to answer that narrow question in light of the facts of this case.
Finally, contrary to the Government's assertions in its supplemental brief, the lack of an obvious remedy (should Rodriguez-Penton satisfy Strickland on remand) does not automatically equate to a failure to show prejudice. There is some analytical overlap between the two inquiries-if there were, in fact, no other options at the time of the guilty plea, then Rodriguez-Penton could not demonstrate a reasonable probability that the outcome would have been different absent trial counsel's deficient performance. But what options were available to Rodriguez-Penton at the time of the plea is distinct from what options are available to the court in the present day. Rodriguez-Penton has asserted that his decisionmaking process would have been different if he had been properly advised, and the Government has not offered any countervailing evidence that Rodriguez-Penton could not have secured a more favorable plea. Thus, it remains possible that, on remand, he will show a reasonable probability of a different outcome.
III. CONCLUSION
For the foregoing reasons, the district court's decision is hereby REVERSED and REMANDED for additional proceedings consistent with this opinion.
DISSENT

Rodriguez-Penton's sentence was subsequently lowered to 97 months of imprisonment for reasons unrelated to this appeal.

The sheet of paper to which Rodriguez-Penton referred might have been the April 11, 2012, Immigration Detainer sent by the Department of Homeland Security (DHS) to the U.S. Marshals for the Western District of Kentucky. Although the detainer is dated April 11 and instructs that Rodriguez-Penton be notified of its existence, the record neither confirms when it was sent to the Marshals nor indicates that Rodriguez-Penton received a copy. The record is also silent as to whether anyone else involved in the case, including either the Assistant U.S. Attorney or Rodriguez-Penton's attorney, was aware of the detainer's existence. No one mentioned the detainer even though Rodriguez-Penton's citizenship status arose at several points during the plea entry and sentencing hearings, and no one mentioned it at the plea hearing in response to the district court's specific question.

After issuing the COA, this court granted the Government's request to hold the case in abeyance pending the Supreme Court's decision in Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017). The parties updated their briefs after the decision in Lee .