RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0066p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DOMINIQUE DUSHON GILBERT,

                         *Petitioner-Appellant*,

      *v*.

UNITED STATES OF AMERICA,

                         *Respondent-Appellee*.

No. 21-2806

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
Nos. 4:19-cr-20029; 4:21-cv-10553—Matthew F. Leitman, District Judge.

Argued: March 9, 2023

Decided and Filed: April 7, 2023

Before: SUHRHEINRICH, COLE, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Craig A. Daly, CRAIG A. DALY, P.C., Royal Oak, Michigan, for Appellant.
Jessica V. Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.
**ON BRIEF:** Craig A. Daly, CRAIG A. DALY, P.C., Royal Oak, Michigan, for Appellant.
Nancy Abraham, UNITED STATES ATTORNEY'S OFFICE, Flint, Michigan, for Appellee.

───────────────

## OPINION

───────────────

SUHRHEINRICH, Circuit Judge. Does trial counsel render ineffective assistance of counsel if he gives incorrect advice while a defendant is considering a plea deal with the government but then recognizes and rectifies his mistake prior to sentencing? The petitioner

here claims that trial counsel does so in this appeal from the denial of a 28 U.S.C. § 2255 petition. The petitioner also faults trial counsel for failing to object when the district court ran his aggravated identity theft sentence consecutive rather than concurrent to his state parole revocation sentence, and for not seeking a downward adjustment under USSG § 5G1.3. He faults appellate counsel for failing to raise the consecutive-versus-concurrent and USSG § 5G1.3 issues on direct appeal.

Here, the question of whether trial counsel's performance was "*Strickland* deficient" is best answered by determining whether there was prejudice. Even if the petitioner could demonstrate that trial counsel's performance—initial error followed by correction—was ultimately deficient performance, he failed to present evidence of prejudice. The district court also correctly concluded that sentences imposed under the aggravated identity theft statute must run consecutive to all other (including state) sentences and are not subject to USSG § 5G1.3 adjustments. Therefore, all the petitioner's ineffective assistance and merits claims fail.

## I.

On June 22, 2018, local police arrested Petitioner Dominique Gilbert for printing false identifications and credit cards in his home. Because Gilbert was on parole for a state conviction, he was returned to the custody of the Michigan Department of Corrections (MDOC). On August 1, 2018, federal authorities charged Gilbert in a criminal complaint with several identity theft crimes.

On August 6, 2018, the district court issued a writ of habeas corpus *ad prosequendum* directing the MDOC to deliver Gilbert to federal court for arraignment on September 18, 2018. Gilbert appeared as ordered; Barry Wolf was appointed as counsel for Gilbert; and Gilbert consented to federal detention pending trial. Gilbert was thus detained by the United States Marshals Service in the Genesee County Jail, not in an MDOC state facility.

There he remained until, after several agreed-to continuances and continuing negotiations, Gilbert pleaded guilty to a superseding information charging him with one count of possessing device-making equipment, in violation of 18 U.S.C. § 1029(a)(4) (Count 1) and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (Count 2). In their

Rule 11(c)(1)(C) agreement, the parties agreed that: (1) Gilbert's guideline range was 39 to 45 months; (2) the sentence on Count 1 must be at least 15 months; (3) the sentence on Count 2 must be at least 24 months; and (4) the Count 2 sentence would run "consecutive to any sentence imposed on count one." During the plea hearing, the court reminded Gilbert that Count 2 "will run consecutive to any other term of imprisonment that I impose in this case," and that "24 of those months have to be served consecutively to the sentence imposed on Count 1 of the superseding information." The district court did not mention that the aggravated identity theft sentence would run consecutive to any state sentence.

On June 29, 2018, before the federal charge and proceedings, the MDOC issued Gilbert a notice of parole violation. A year later, on July 19, 2019, the Michigan Parole Board (the Board) revoked Gilbert's parole and sentenced him to at least 24 months in custody,[1] upon finding that Gilbert "cannot be managed in the community." The Board set his "reconsideration [of parole] date" at June 24, 2020. This was 24 months after the violation date, June 22, 2018, which meant that the MDOC credited Gilbert's time in pretrial custody.

Meanwhile, Gilbert's federal sentencing was approaching. After reviewing Gilbert's presentence report, Wolf realized that he had mistakenly led Gilbert to believe that the time Gilbert had spent in federal detention (beginning on September 18, 2018) would be credited against his federal sentence. Wolf noted the error in Gilbert's sentencing memorandum. He also advised Gilbert of the error and Gilbert's right to withdraw from the Rule 11 plea agreement.

Wolf reminded the court of the error at the sentencing hearing, on October 1, 2019, telling the court that "quite frankly, I feel that I didn't do an adequate job in advising my client in terms of how time counts." He stated that Gilbert believed that had he remained in state custody, he would have been paroled in six to 12 months and returned to federal custody and been able to count the remaining months of detention towards his federal sentence. Wolf also stated that, had he realized that Gilbert would not receive federal credit, "it may have created some additional negotiating abilities on my part to have gotten rid of at least 39 months." On the other hand, Wolf acknowledged that he did not know what Gilbert's state sentence would have been had

---

[1]An MDOC Hearing Specialist stated that "Gilbert could be held past the 24-month term for up to 60 months."

Gilbert returned to state custody.  *See United States v. Gilbert*, 838 F. App'x 181, 183 (6th Cir. 2021) (direct appeal).

The district court offered Gilbert the opportunity to withdraw his plea but Gilbert decided to stick with it and continue with sentencing, *id.*, because he and Wolf "agreed that it was not in [Gilbert's] best interest to withdraw his plea."  The court sentenced Gilbert to 15 months on Count 1 and 24 months on Count 2, for a 39-month total.  The court made Count 1 "concurrent to the undischarged term of imprisonment with the [MDOC]" and Count 2 "consecutive to Count 1 *and all other terms of imprisonment*."  Gilbert's computation date began on October 1, 2019.  The district court imposed a two-year term of supervised release on Count 1 and a one-year term on Count 2, served concurrently.[2]

Gilbert raised a single issue on direct appeal: he claimed that Wolf was ineffective because Wolf gave him bad advice regarding federal credit for the time served in federal detention.  *See Gilbert*, 838 F. App'x at 182–84.  We declined to address the issue because the record was not adequately developed to fairly evaluate either prong of *Strickland v. Washington*.[3] *Id.* at 183–84.  Specifically we stated that "the record contains only speculation as to whether Gilbert was prejudiced by his counsel's error," noting that "there [wa]s no evidence in the record of what the state parole board would have agreed to"; "no testimony about how Gilbert's trial counsel m[ight] have changed his strategy during plea negotiations had he been properly informed"; and that "the record g[ave] no indication of whether Gilbert would have agreed to postpone his jury trial as he did several times if he had known he was not receiving federal credit." *Id.* at 184.

On March 5, 2021, Gilbert was returned to state custody.  On April 28, 2021, the MDOC released him from state custody and put him back on parole.  Thus, Gilbert ended up serving a 34-month state sentence.

---

[2]Because the maximum term of imprisonment for a § 1029(a)(4) offense is fifteen years, 18 U.S.C. § 1029(a)(4), (c)(1)(A)(ii), the offense is a Class C felony, *id.* § 3559(a)(3), which carries a maximum term of supervised release of three years, *id.* § 3583(b)(2).  Because the maximum term of imprisonment for a § 1028A(a)(1) offense is two years, the offense is a Class E felony, *id.* § 3559(a)(5), which carries a maximum term of supervised release of one year, *id.* § 3583(b)(3).  Neither provision has a minimum term of supervised release.

[3]466 U.S. 668 (1984).

On March 12, 2021, Gilbert filed this § 2255 motion, arguing that Wolf was ineffective because he failed to (1) correct the district court's alleged misconception that the aggravated identity theft conviction must run consecutively to his undischarged state parole violation sentence; (2) seek relief under USSG § 5G1.3; and (3) accurately advise him that he would *not* receive federal credit for time spent in federal custody. In an amended motion, Gilbert asserted freestanding due process claims—that the district court violated his due process rights by imposing a consecutive sentence to his state parole term and by failing to apply USSG § 5G1.3. He also claimed that appellate counsel performed deficiently for not raising issues (1) and (2) as further proof of Wolf's ineffective assistance.

In a supporting affidavit, Wolf admitted (again) that he had given Gilbert erroneous advice regarding credit for time served on his sentences. Wolf explained that because of his incorrect understanding of the law he (1) did not expedite Gilbert's guilty plea and sentence; (2) did not seek a downward adjustment under USSG § 5G1.3; and (3) did not object at sentencing when the court ruled that the aggravated identity theft sentence had to run consecutive to all other undischarged sentences, including his undischarged state sentence.

The district court denied Gilbert's motion and granted a certificate of appealability.

**II.**

Gilbert has now completed his term of imprisonment, so we must first consider whether his petition is moot because it no longer presents a case or controversy within the meaning of Article III, § 2 of the Constitution. *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009). "If 'events occur during the pendency of a litigation which render the court unable to grant the requested relief,' the case becomes moot and thus falls outside our jurisdiction." *Id.* (quoting *Abela v. Martin*, 309 F.3d 338, 343 (6th Cir. 2002)). But "[e]ven when an appellant has been released from custody, his case is not moot so long as the appeal 'potentially implicates' the length of the appellant's supervised release term." *United States v. Maken*, 510 F.3d 654, 656 n.3 (6th Cir. 2007) (quoting *United States v. Nissenbaum*, 75 F. App'x 412, 413 n.2 (6th Cir. 2003) (per curiam)). "In practice, this means that a completed custodial sentence may be appealed so long as the district court would retain discretion to reduce the sentence of supervised

release on remand." *United States v. Solano-Rosales*, 781 F.3d 345, 355 (6th Cir. 2015); *United States v. Albaadani*, 863 F.3d 496, 502–03 (6th Cir. 2017) (applying *Solano-Rosales*); *United States v. Ketter*, 908 F.3d 61, 66 (4th Cir. 2018) (adopting the "unitary-sentence approach" applied by this court and seven other circuits); *see also Demis*, 558 F.3d at 515 (noting that "shortening the term of supervised release may well be appropriate for a petitioner who challenges the *length* of his sentence," but holding that the rule did not apply where the petitioner challenged only the validity of the Bureau of Prison's placement regulations). *Cf. Owen v. United States*, 930 F.3d 989, 990 (8th Cir. 2019) (finding the petitioner's § 2255 appeal, which "exclusively" challenged his term of imprisonment, moot because he did not dispute the term of his supervised release).

Neither § 1029(a)(4) nor § 1028A(a)(1) carries a minimum supervised release term, so "the district court . . . retains the discretion to reduce the sentence of supervised release on remand," which means Gilbert's appeal is not moot. *See Albaadani*, 863 F.3d at 502–03 (cleaned up); *Maken*, 810 F.3d at 656 n.3 (noting that upon remand district courts have discretion under the advisory guidelines "to impose a shorter supervised release term"). And it does not matter that Gilbert did not specifically challenge the term of supervised release in his motion to vacate or in his appellant brief because he "is still serving his term of supervised release, which was imposed in the judgment that he appeals," *Albaadani*, 863 F.3d at 503, and Gilbert has asked us to vacate his conviction, *see id.* at 506 (Kethledge, J., dissenting) (noting that "if a defendant does not challenge the validity of his conviction, but rather challenges only his sentence or some portion of it, his appeal is moot once the challenged portion of the sentence has expired"). *But see Evans v. United States*, No. 19-6126, 2021 WL 9553012, at *1 (6th Cir. Aug. 12, 2021) (order) (concluding, with the parties' agreement, that the petitioner's appeal was moot because he had completed his term of imprisonment and did not challenge his term of supervised release and or conviction).

## III.

We review a district court's denial of a § 2255 motion de novo and its factual findings for clear error. *Bullard v. United States*, 937 F.3d 654, 658 (6th Cir. 2019). Ineffective assistance of

counsel claims, which are mixed questions of law and fact, are reviewed de novo.  *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018).

**A.**

Section 2255 requires us to afford relief if a prisoner's constitutional rights were infringed.  28 U.S.C. § 2255.  Ineffective assistance of counsel claims are cognizable under § 2255.  *Massaro v. United States*, 538 U.S. 500, 504, 508–09 (2003).  "[T]he Sixth Amendment's requirement that defendants receive 'the effective assistance of competent counsel' extends to all critical stages of a criminal proceeding," including plea negotiations, *Byrd v. Skipper*, 940 F.3d 248, 255 (6th Cir. 2019) (first quoting *Lafler v. Cooper*, 566 U.S. 156, 163 (2012); and then citing *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)), sentencing, and direct appeal, *Lafler*, 566 U.S. at 165.

To prove that he was deprived of that right, Gilbert must show deficient performance by counsel and resulting prejudice to the defendant.  *Strickland*, 466 U.S. at 687, 694.  To establish deficient performance, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at 690.  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

**1.**

Although defendants have no constitutional right to a plea offer, "when the Government chooses to enter into plea negotiations, the Constitution requires that defendants receive effective assistance in navigating that crucial process."  *Rodriguez-Penton*, 905 F.3d at 489 (citing *Lafler*, 566 U.S. at 168).  That means accurate advice regarding sentence exposure.  *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (holding that a defendant has the right to have his counsel "explain the sentencing exposure the defendant will face"); *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003).  *See generally Byrd*, 940 F.3d at 257–58 (noting that an attorney has a duty to give correct legal advice (collecting cases)).

Generally speaking, "prejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermine[d] confidence in the outcome of the plea process." *Rodriguez-Penton*, 905 F.3d at 488. In the plea negotiation context, that means showing "a reasonable probability that, with proper advice, the outcome of those negotiations would have been different." *Id.* at 489–90; *Byrd*, 940 F.3d at 258 (same). A defendant is not limited to showing he would have gone to trial but for the bad advice during the plea process. *Rodriguez-Penton*, 905 F.3d at 487–88. He "may demonstrate prejudice if he can show that, had he known about the risk of adverse . . . consequences, he would have bargained for a more favorable plea." *Id.* at 488.

First, performance. Gilbert contends that because Wolf incorrectly believed that Gilbert would get federal credit for the time served, he (1) gave bad advice, (2) failed to negotiate a shorter prison sentence, and (3) failed to expedite Gilbert's guilty plea and sentence. Wolf's advice was wrong—at least initially—because Gilbert would not get credit on his federal sentence for time served in detention because he came to federal court via a writ of habeas corpus *ad prosequendum*. "When a State sends a prisoner to federal authorities pursuant to such a writ, 'the prisoner is merely "on loan" to the federal authorities,' with the State retaining primary jurisdiction over the prisoner." *United States v. White*, 874 F.3d 490, 507 (6th Cir. 2017) (quoting *United States v. Casas*, 425 F.3d 23, 67 (1st Cir. 2005)). "[A] federal sentence [of a prisoner on loan] does not begin to run when a prisoner in state custody is produced for prosecution in federal court pursuant to the federal writ of habeas corpus *ad prosequendum*." *Id.* (quoting *United States v. Evans,* 159 F.3d 908, 912 (4th Cir. 1998)) (cleaned up). Thus, any credit for Gilbert's time in pretrial detention would count towards his state sentence. *See, e.g.*, *Bridgeman v. Bureau of Prisons*, 112 F. App'x 411, 413 (6th Cir. 2004) (order); *Broadwater v. Sanders*, 59 F. App'x 112, 113–14 (6th Cir. 2003) (order).[4]

---

[4]A federal defendant has the right to receive credit for time served in official detention before his sentence begins. 18 U.S.C. § 3585(b). But a district court does not have the authority to grant credit for time served; only the Attorney General or the Bureau of Prisons do. *United States v. Wilson*, 503 U.S. 329, 333–34 (1992); *United States v. Crozier*, 259 F.3d 503, 520 (6th Cir. 2001). The defendant cannot receive a double credit. *See* 18 U.S.C. § 3585(b) (stating that "[a] defendant shall be given credit . . . for any time . . . that has not been credited against another sentence").

But Wolf caught his error and remedied it before Gilbert was sentenced—he readvised Gilbert and notified the court of his mistake. Gilbert claims that Wolf revealed the error too late because the district court had already accepted the plea and the plea agreement. But Wolf's "confession" prompted the district court to ask Gilbert whether he wanted to withdraw his guilty plea. Thus, it arguably was timely enough because it precipitated the court's offer of a cure—the opportunity for Gilbert to withdraw his plea and presumably the plea agreement. Gilbert never explains why he and Wolf decided that was not his best option, and never claimed that but for counsel's advice he would not have pleaded guilty. In fact, he did just the opposite. So, in the end, it is hard to say that Wolf's performance was deficient. *Cf. Logan v. United States*, 910 F.3d 864, 871–72 (6th Cir. 2018) (finding no Sixth Amendment violation, despite erroneous advice from his retained attorney, where the petitioner's attorney of record correctly advised him of the risks of going to trial and the petitioner had all the information he needed to make an informed decision); *Warner v. United States*, 975 F.2d 1207, 1210–12 (6th Cir. 1992) (finding no prejudice because the district court corrected counsel's promise of a concurrent sentence and gave the petitioner a chance to withdraw his guilty plea).

Even if we agreed with Gilbert that Wolf's performance was deficient because he didn't attempt to negotiate a better plea or expedite the federal plea-through-sentencing process, there is still the question of prejudice. Gilbert asserts that had Wolf been correctly informed during plea negotiations, he could have bargained for a lower than 39-month minimum sentence to offset the loss of federal credit for time served in pretrial detention. But this is sheer speculation on Gilbert's part. In fact, because Gilbert was on a federal retainer, he could only receive credit on the state side, and actually did, *see Bridgeman*, 112 F. App'x at 413; *Broadwater*, 59 F. App'x at 113–14, so this was hardly a bargaining chip for a lower sentence. And Gilbert offers no *evidence* to demonstrate a reasonable probability that the government would have offered him a better deal. For example, he does not claim that he would have cooperated in return for a lower sentence and he has never asserted that but for Wolf's advice, he would not have pleaded guilty. Furthermore, the government offered countervailing evidence that Gilbert "could not have secured a more favorable plea." *Rodriguez-Penton*, 905 F.3d at 490. In response to the motion to vacate, the government stated that it would never have been interested in making a better plea offer because, as the affidavit in support of the criminal complaint recites it had a strong case

against Gilbert ("including a full video confession"). In fact, at sentencing, the government asked the court to impose the entire 39-month sentence consecutively to the state sentence.

Contrast this case with *Rodriguez-Penton* and *Byrd*. In *Rodriguez-Penton*, the government offered the defendant two plea deals, including a six-year sentence (72 months). 905 F.3d at 484. The defendant ultimately entered an open plea to the single count of conspiracy to distribute and possess oxycodone. *Id.* The district court sentenced him to 121 months' imprisonment. *Id.* at 485. Neither the district court nor trial counsel told the defendant during the plea process that he might face deportation by pleading guilty, which he learned after sentencing. *Id.* at 484–85. In his § 2255 motion, the defendant asserted that "had he been advised that he could be deported, he might have accepted a similar plea offer especially if it contained a non-deportation clause." *Id.* at 486. We held that he could establish *Strickland* prejudice by establishing that he would have negotiated a better plea; thus, "with proper advice, the outcome of those negotiations would have been different." *Id.* at 490. We remanded for further proceedings because the defendant "ha[d] asserted that his decisionmaking process would have been different if he had been properly advised, and the Government ha[d] not offered countervailing evidence that [the defendant] could not have secured a more favorable plea." *Id.*

In *Byrd*, the petitioner never received a plea offer despite the prosecutor's willingness to negotiate an agreement in a county where the judges usually accepted such pleas, because trial counsel, based on "a thoroughly unreasonable misunderstanding of the law" and a grossly misguided belief that he could acquire an acquittal, never inquired about one. *Byrd*, 940 F.3d at 260. We found prejudice because the petitioner testified that he would have accepted a lesser plea and offered sworn testimony from the prosecutor that his office had a practice of waiting for defense counsel to initiate negotiations and that the county judges "rarely reject plea agreements." *Id.* at 252, 258, 260.

In both of those cases, the petitioners made "evidentiary demonstrations to establish prejudice." *Id.* at 258; *Rodriguez-Penton*, 905 F.3d at 488. Gilbert's case plateaus at speculation.

Gilbert also posits that had Wolf expedited the federal guilty plea and sentencing process, he could have served a brief state sentence and then returned to the federal system sooner. But, as it turns out, that was also sheer speculation on his part: the Michigan Parole Board imposed a 24-month minimum sentence on July 19, 2019, upon finding that Gilbert "cannot be managed in the community." So Gilbert *knew* he would not be receiving a short state parole revocation sentence by the time he was sentenced on the federal charges on October 1, 2019. Because the district court ran Count 1 concurrent with the undischarged state-parole violation sentence and Count 2 had to run consecutive to Count I, Gilbert has not shown that he served any extra prison time as a result of counsel's mistaken understanding.

At the end of the day, "the Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013). Wolf's performance was deficient—at least initially. But he corrected his error, and on this record, Gilbert did not suffer any prejudice as a result. Thus, Gilbert has failed to "surmount *Strickland*'s high bar" in this context. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (cleaned up).

**2.**

Although trial counsel initially requested that Gilbert's federal sentence run concurrent to his state sentence, he agreed with the district court that § 1028A required a consecutive sentence for Count 2 and did not object when the court imposed it. The district court concluded that "[t]he plain language of the aggravated identity theft statute, 18 U.S.C. § 1028A, unambiguously require[s] . . . [a district court] to run the aggravated identity theft statute consecutive to the state parole-violation sentence." Gilbert now contends that this is not how the statute should be read and faults Wolf for failing to object and appellate counsel for not raising this error on direct appeal.

The short answer is Congress clearly "meant what [it] said and said what [it] meant"[5] in 18 U.S.C. § 1028A—that an aggravated identity theft sentence must run consecutive to all other

---

[5]Dr. Seuss, Horton Hatches the Egg (1940).

sentences, including undischarged state sentences. Section 1028A provides in pertinent part as follows:

> (b) Consecutive sentence.--Notwithstanding any other provision of law—
>
> . . .
>
> (2) except as provided in paragraph (4), no term of imprisonment imposed on a person under this section shall run concurrently with *any other term of imprisonment* imposed on the person under *any other provision of law . . . .*

18 U.S.C. § 1028A(b)(2) (emphases added).

Although we have held that § 1028A requires an identity theft sentence to run consecutive to all other *federal* sentences, *see United States v. Jones*, 817 F. App'x 138, 141 (6th Cir. 2020) (stating that "[t]hat statute leaves no room to maneuver"),[6] we have not yet considered whether a separate *state* sentence qualifies as "any other term of imprisonment." The Ninth Circuit has concluded that it does, holding that a district court has no discretion under § 1028A and must run federal identity theft sentences consecutively to state sentences. *See United States v. Lingatong*, 490 F. App'x 68, 69 (9th Cir. 2012) (per curiam); *see also United States v. Ward*, 793 F. App'x 629, 630 (9th Cir. 2020) (per curiam) (same); *United States v. Usher*, 789 F. App'x 585, 586 (9th Cir. 2020) (per curiam) (same).

The Ninth Circuit and the district court rightly looked to *United States v. Gonzales*, 520 U.S. 1 (1997). There, the Supreme Court was "asked to decide whether a federal court may direct that a prison sentence under 18 U.S.C. § 924(c) run concurrently with a state-imposed sentence, even though § 924(c) provides that a sentence imposed under that statute 'shall [not] . . . run concurrently with *any other* term of imprisonment.'" *Id.* at 2–3 (emphasis added). The Court held "that it may not." *Id.* at 3. Its reasoning "beg[a]n, as always, with the statutory text," and ended there:

> The question we face is whether the phrase "any other term of imprisonment" "means what it says, or whether it should be limited to some subset" of prison

---

[6]In *Jones*, the defendant was convicted of federal conspiracy to commit identity theft and mail fraud, identity theft, mail fraud, and aggravated identity theft. 817 F. App'x at 140. We held that § 1028A required his identity theft conviction to run consecutive to all of the other sentences, explaining that "[t]hat statute leaves no room to maneuver" and there was no explanation "how 'any other' could be interpreted any other way." *Id.* at 141.

sentences, *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)—namely, only federal sentences.  Read naturally, the word "any" has an expansive meaning, that is, "one or some indiscriminately of whatever kind."  Webster's Third New International Dictionary 97 (1976).  Congress did not add any language limiting the breadth of that word, and so we must read § 924(c) as referring to all "term[s] of imprisonment," including those imposed by state courts.  *Cf. United States v. Alvarez–Sanchez*, 511 U.S. 350, 358 (1994) (noting that statute referring to "any law enforcement officer" includes "federal, state, or local" officers); *Collector v. Hubbard*, 12 Wall. 1, 15 (1870) (stating "it is quite clear" that a statute prohibiting the filing of suit "in any court" "includes the State courts as well as the Federal courts," because "there is not a word in the [statute] tending to show that the words 'in any court' are not used in their ordinary sense").  There is no basis in the text for limiting § 924(c) to federal sentences.

*Id.* at 5.

We see little daylight between § 924(c) and § 1028A(b)(2), which is even more "expansive" and emphatic, stating that no term of imprisonment "shall run concurrently with *any other term of imprisonment* imposed on the person *under any other provision of law*."  18 U.S.C. § 1028A(b)(2) (emphases added).  Thus, we agree with the Ninth Circuit and the district court that *Gonzales* compels a similar conclusion: read naturally, the term "any other term of imprisonment" encompasses state sentences.  *See generally Carcieri v. Salazar*, 555 U.S. 379, 387 (2009) (noting that "settled principles of statutory construction" require a court to "first determine whether the statutory text is plain and unambiguous," and "[i]f it is," to "apply the statute according to its terms").

Furthermore, § 924(c) and § 1028A(b)(2) are kindred statutes.  The drafters of § 1028(A) had § 924(c) in mind.  *See Dean v. United States*, 581 U.S. 62, 71 (2017) (noting that "§ 1028A was passed in 2004, long after Congress enacted the 1984 amendments creating the current sentencing regime in § 924(c)").  Thus, analogizing to § 924(c) is appropriate here.  "When the Supreme Court has given a phrase a specific meaning, courts assume that Congress intends the meaning to carry over to the 'same wording in related statutes.'"  *Davis v. Echo Valley Condo. Ass'n*, 945 F.3d 483, 491 (6th Cir. 2019) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 54, at 322 (2012)); *see also Wilson v. Safelite Grp., Inc.*, 930 F.3d 429, 440 (6th Cir. 2019) (Thapar, J., concurring in part and concurring in the judgment) (stating that courts "also look to other statutes . . . for context or to better understand a

term's meaning"). In fact, in *Dean* the Court commented that § 1028A, including (b)(2)'s requirement "that the mandatory minimum must be consecutive to the sentence for the underlying offense," "tracks § 924(c) in relevant respects." *Dean*, 581 U.S. at 70.[7] The district court's reliance on *Gonzales* was proper: the "any" in § 1028A(b)(2) means the same thing as the "any" in § 924(c). *See generally Hall v. Hall*, 138 S. Ct. 1118, 1128 (2018) (stating that "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it" (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947))).

Another provision of the statute reinforces this reading. Section (b)(2) carves out an exception, which is explained in paragraph (b)(4). It grants the district court discretion to run multiple aggravated identity theft convictions imposed at the same time concurrently: "a term of imprisonment imposed on a person for a violation of this section may, in the discretion of the court, run concurrently, in whole or in part, *only with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section*." § 1028A(b)(4) (emphasis added). As the district court observed, that Congress "carefully identified the 'only' sentence to which an aggravated identity theft sentence may run concurrently, and that [the] sentence is not one imposed by a state court" "underscores" the point—that district courts have no discretion except when imposing multiple aggravated identity theft sentences at once. *See Singh v. Rosen*, 984 F.3d 1142, 1152 (6th Cir. 2021) (stating that "courts presume that Congress acts intentionally when it uses different language across similar provisions" (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353–54 (2013))).[8] The

---

[7]In *Dean*, the Supreme Court looked to § 1028A in helping it determine whether § 924(c)'s mandatory minimum requirement prevented sentencing courts from considering that sentence in its 18 U.S.C. § 3553(a) analysis for the predicate offense. The Court concluded that sentencing courts were not forbidden from considering § 924(c) sentences because § 924(c) does not contain restrictive language like that found in § 1028A(b)(3), which states that "a court shall not in any way reduce the term to be imposed for [the predicate felony] so as to compensate for, or otherwise take into account, any separate term of imprisonment . . . for a violation of this section." *Id.* at 69–70 (emphasis added). *Dean* thus establishes that Congress considers § 924(c) and § 1028A as related statutes.

[8]Contrary to what Gilbert says, *United States v. Lee*, 545 F.3d 678 (8th Cir. 2008) (per curiam), does not apply here. There, the district court ran three of the defendant's five aggravated identity theft sentences consecutive to the underlying predicate felonies. *Id.* at 680. The defendant challenged the district court's decision to impose consecutive sentences, since under 18 U.S.C. § 1028A(b)(4), it had the discretion to impose concurrent sentences.

Sentencing Guidelines read § 1028A the same way. *See* USSG § 2B1.6 cmt. n.1 (noting that the term of imprisonment for a single identity theft conviction must be imposed consecutively to any other term of imprisonment except as provided "in the case of multiple convictions under 18 U.S.C. § 1028A").

Gilbert argues that 18 U.S.C. § 3584(a) gave the district court discretion to impose a concurrent sentence. Section 3584(a) states that "[i]f multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). *See generally Dean*, 581 U.S. at 67 (noting that § 3553(a), § 3582(a), and § 3584(b) "permit a court imposing a sentence on one count of conviction to consider sentences imposed on the other counts"). This argument runs headlong into two well-settled principles of statutory construction. First, "Congress has the power to fix the sentence for a federal crime" as well as the ability to limit "the scope of judicial discretion." *United States v. Cecil*, 615 F.3d 678, 696 (6th Cir. 2010) (quoting *Mistretta v. United States*, 488 U.S. 361, 364 (1989)); *see also United States v. Stahl*, 506 F. App'x 479, 481 (6th Cir. 2012) (per curiam). Second, "[t]he specific governs the general in the interpretation of a legal text." *United States v. Riccardi*, 989 F.3d 476, 482 (6th Cir. 2021); *see also United States v. Gilbert*, 725 F. App'x 370, 376 (6th Cir. 2018) (holding that "Congress may . . . override the general sentencing provisions of § 3553 in specific sentencing statutes, as it expressly did in § 1028(b)(3)").

Gilbert also argues that the term "*imposed*" in the phrase with "any other term of imprisonment *imposed* on the person" is a game-changer because it limits (b)(2)'s restriction to sentences imposed *at the time of sentencing* and not sentences imposed on a different occasion, such as a previously-imposed, undischarged state sentence. But that cannot be right, because subsection (b)(4) says that a district court *can* impose concurrent sentences on the person if there

---

Section 1028A(b)(4) does not apply here. To the extent *Lee* suggests that a district court may run an aggravated identity theft sentence concurrent to a sentence not imposed "at the same time," it is dicta.

*United States v. Vidal-Reyes*, 562 F.3d 43 (1st Cir. 2009), does not apply either. There, the issue was whether § 1028A(b)(3), which bars a court from taking into account the mandatory two-year sentence for aggravated identity theft to reduce the sentence for predicate offenses, also applied to non-predicate offenses. The First Circuit held that it did not. *Id.* at 56.

are multiple aggravated identity theft sentences. These provisions must be read in harmony. *See, e.g.*, *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 377 F.3d 592, 596–97 (6th Cir. 2004). "Statutory interpretation is [after all] a 'holistic endeavor'—the structure and wording of other parts of a statute can help clarify the meaning of an isolated term." *Keen v. Helson*, 930 F.3d 799, 803 (6th Cir. 2019) (quoting *United Sav. Assoc. of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988))). As the district court pointed out, Congress could have added "at the same time" to subsection (b)(2) had it wanted to. *See, e.g.*, *Dean*, 581 U.S. at 71 ("But § 1028A[b][4]] confirms that it would have been easy enough to make explicit what [Gilbert] argues is implicit in [§ 1028A(b)(2)]."); *Keen*, 930 F.3d at 804 (noting that "Congress could have said that 'any person' injured by a RESPA violation could sue" but instead "said that only 'borrowers' could sue").

But what about *United States v. Potts*? asks Gilbert. 947 F.3d 357 (6th Cir. 2020). As the district court noted, "[t]hat's a fair point," because *Potts* might *imply* that a district court has discretion to impose a concurrent sentence. Here's why. In *Potts* the district court ran the defendant's federal sentences for unauthorized-access-device fraud and aggravated identity theft consecutive to an undischarged state sentence. *Id.* at 363. On appeal—but not in the district court—the defendant complained that his sentence was procedurally unreasonable because the district court failed to expressly consider USSG § 5G1.3 at sentencing. That guideline sets out several rules for district courts to follow when deciding whether to impose consecutive or concurrent sentences in various circumstances. USSG § 5G1.3(a)–(d). An accompanying application note lists factors a court should consider in the consecutive-versus-concurrent decision when a defendant's case falls under the catch-all and discretionary policy statement in § 5G1.3(d). *See Potts*, 947 F.3d at 369 (discussing USSG § 5G1.3 cmt. n.4(A)).

On plain error review, we held that "[t]he district court . . . committed no error at all, let alone plain error," because the record reflected that at sentencing it had adequately "followed the rationale provided in Application Note 4(A)" even though it had not expressly referenced § 5G1.3(d) by name. *Id.* at 369–70. Critically, the government on appeal argued merely that the district court's application of USSG § 5G1.3 was proper and did not argue that § 1028A prohibited the court from imposing a concurrent sentence for the defendant's aggravated-

identity-theft offenses. That may be because, unlike in this case, the district court in *Potts* had also refused to run the federal sentence for the defendant's other *non-aggravated-identity-theft* offense (unauthorized-access-device fraud) concurrently with the state sentence. *Id.* at 363–64. So § 5G1.3 may well have applied at least in part in *Potts*. Thus, as the district court here concluded, "*Potts* cannot reasonably be read as *holding* that despite Section 1028A(b), Section 5G1.3 permits a district court to run an aggravated identity theft sentence concurrently with an undischarged state sentence." *Potts* is therefore not precedent for such a proposition. For an issue "to be part of its holding" "it must be clear that the court considered the issue and consciously reached a conclusion about it." *Wright v. Spaulding*, 939 F.3d 695, 701–02 (6th Cir. 2019). "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Id.* at 702 (quoting *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006)).

And it's hard to fault Wolf for not making the *Potts* argument because (1) *Potts* was not decided until after Gilbert was sentenced, and (2) *Gonzales* was already on the books. *Cf. Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999) (counsel was not deficient for failing to anticipate a change in law that was not foreshadowed by then-existing case law). *See generally Bullard v. United States*, 937 F.3d 654, 661–63 (6th Cir. 2019).

In short, neither trial nor appellate counsel were ineffective for failing to object to the consecutive sentence. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (failing to make a futile objection was not ineffective assistance).

**3.**

Gilbert asserts that trial counsel should have sought a downward adjustment under USSG § 5G1.3(b), because, according to him, the underlying state parole conviction was relevant conduct to the aggravated theft conviction. But as the district court held, the plea agreement put a hard stop on that argument because it required the court to impose a sentence of not less than 39 months. Gilbert freely agreed to this condition, so any objection would have been pointless. *See id.* Furthermore, as discussed, the statutory sentence required by § 1028A trumps the sentencing guidelines.

**B.**

This leaves Gilbert's substantive claims, *i.e.*, that the district court erred by imposing a consecutive sentence further by not downwardly adjusting the sentence under USSG § 5G1.3. These issues were not raised on direct appeal and so are procedurally defaulted unless excused. *See, e.g.*, *Massaro*, 538 U.S. at 504. But "challenges that cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance under the standard set forth in *Strickland*." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001); *Bennett v. Brewer*, 940 F.3d 279, 286 (6th Cir. 2019); *see also Wallace v. United States*, 43 F.4th 595, 602–03 (6th Cir. 2022).

As just discussed, appellate counsel was not deficient because those issues were not winning arguments for Gilbert. *See, e.g.*, *Bennett*, 940 F.3d at 286–87; *United States v. Pierce*, 403 F. App'x 988, 989 (6th Cir. 2010). Furthermore, Gilbert knowingly and voluntarily waived his right to appeal both his conviction and sentence on any grounds "if [his] sentence of imprisonment [did] not exceed 45 months."[9] *See, e.g.*, *United States v. Coker*, 514 F.3d 562, 573 (6th Cir. 2008) (noting that this court has "repeatedly enforced plea agreements waiving specific appellate rights" "so long as the waiver is knowing and voluntary"). Even if Gilbert could somehow show cause, he has not shown prejudice. And even if he could do that, his claims would fail on the merits, for the reasons we discussed above.

**III.**

We affirm.

---

[9]Gilbert did not waive his right to raise ineffective assistance of counsel claims.