NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0531n.06

No. 22-3937

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 23, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| RICHARD LEMOINE, JR., | ) | |
| Petitioner-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| UNITED STATES OF AMERICA, | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

Before: MOORE, COLE, and LARSEN, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Richard G. Lemoine, Jr., a federal prisoner, appeals from the district court's order denying his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Lemoine's sole claim on appeal is that his counsel at sentencing was constitutionally ineffective for failing to raise an objection based on the Double Jeopardy Clause when the district court sentenced him to 151 months' imprisonment for both receiving and possessing child pornography.

For the reasons that follow, we hold that the district court's decision was not clearly erroneous. Accordingly, we **AFFIRM** the district court's order denying Lemoine's § 2255 motion.

**I. BACKGROUND**

On August 10, 2016, Lemoine pleaded guilty to a two-count indictment charging him with: (1) from December 26, 2012, through July 5, 2015, receiving computer files that contained visual depictions of real minors engaged in sexually explicit conduct in violation of 18 U.S.C.

§ 2252(a)(2) (Count 1); and (2) possessing child pornography on July 8, 2015, that included an image of a prepubescent minor in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count 2). R. 31 (8/10/2016 Plea Hr'g Tr. at 16–17) (Page ID #188–89).

Lemoine began viewing child pornography in 2010. R. 15 (Final Presentence Report ¶ 15) (Page ID #57). Between 2010 and 2015, Lemoine accessed various websites to trade links to child pornography with others, who in return would provide Lemoine with links to other videos. *Id.*; *see also* R. 53-1 (Lemoine Confession) (Page ID #384). Lemoine viewed child pornography on his laptop and saved the files to a thumb drive that he hid in his gun cabinet. R. 53-1 (Lemoine Confession) (Page ID #384). Lemoine also viewed child pornography by: accessing specific websites, watching videos on a media player, and trading links with others online. *Id.*

Between January 2, 2015, and February 22, 2015, Lemoine accessed a child pornography website ("Playpen")[1] for a total of thirty-two hours, during which he accessed multiple posts that contained links to child pornography. R. 15 (PSR ¶¶ 8–13) (Page ID #56–57). Following law-enforcement investigation into Lemoine's activities on Playpen, the FBI executed a search warrant at Lemoine's residence on July 8, 2015, and seized his laptop (which included its hard drive), smartphone, and thumb drive. *Id.* ¶¶ 9, 14 (Page ID #57). A forensic analysis of the devices showed 487 videos and 697 images of child pornography, *id.* ¶ 14 (Page ID #57), of which 477 videos and 696 images were unique, R. 53-2 (Forensic Analysis at 2) (Page ID #386). Lemoine's laptop contained eighty-four unique images and no videos of child pornography, his thumb drive

---

[1]Throughout this opinion, we refer to what was denoted "Website A" before the district court by its actual name, Playpen. *See* Gov't Br. at 4 (noting that what was described as "Website A" in the PSR was actually named Playpen) (citing R. 53-1 (Confession) (Page ID #384) (Lemoine referring to Playpen); R. 15 (PSR ¶¶ 7–9) (Page ID #56–57) (PSR referring to Lemoine's activities on Website A)).

contained 612 unique images and 477 unique videos of child pornography, and his smartphone contained no child pornography. *Id.* at 3 (Page ID #387); *see also* R. 53 (U.S. Br. in Supp. at 3) (Page ID #378). Lemoine was arrested on April 28, 2016. R. 5 (Executed Arrest Warrant) (Page ID #18).

Sometime between November 8, 2016, and sentencing on November 22, 2016, Lemoine's original counsel died, and no sentencing memoranda were filed. *See* R. 74 (6/18/2021 Hr'g Tr. at 7) (Page ID #485). The docket does not show at what point replacement counsel was appointed for Lemoine or when replacement counsel filed his notice of appearance. At sentencing, neither party objected to the presentence report, and the district court calculated Lemoine's advisory Guidelines range of 151 to 188 months' imprisonment. R. 28 (Sent'g Tr. at 2, 4) (Page ID #156, 158). Based on the conduct described above, the district court sentenced Lemoine under both counts to a total of 151 months' imprisonment with a $200 special assessment ($100 for each conviction). *Id.* at 11 (Page ID #165). Lemoine raised no objections to the judgment imposed, *id.* at 15 (Page ID #169), and no appeal was filed, *see Lemoine v. United States*, 819 F. App'x 358, 360 (6th Cir. 2020).

A little over a year later, on November 27, 2017, Lemoine filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, R. 25 (Mot. to Vacate) (Page ID #95), which the district court denied on procedural grounds, R. 33 (1/25/2018 D. Ct. Mem. and Order) (Page ID #195). Lemoine filed an amended motion on February 8, 2018, R. 34 (Am. Mot. to Vacate at 1) (Page ID #197), which the district court denied on the merits, R. 41 (3/28/2018 D. Ct. Order and Mem.) (Page ID #339). Lemoine appealed.

On appeal, a prior panel of this court held that the district court "did not squarely address Lemoine's claim[]" that counsel was constitutionally deficient for failing to raise double-jeopardy objections at his sentencing. *Lemoine*, 819 F. App'x at 361. The panel noted that *United States v. Ehle* held "that convictions for receipt of child pornography and possession of the same child pornography violate the Double Jeopardy Clause," but that "separate conduct" could support separate convictions without violating the Double Jeopardy Clause. *Id.* at 363–64 (citing *United States v. Ehle*, 640 F.3d 689, 698–99 (6th Cir. 2011)). The district court did not clearly address "whether separate conduct support[ed] Lemoine's convictions," and therefore the panel remanded for further factual findings. *Id.*

On remand, the district court ordered additional briefing and held a hearing as to whether separate conduct supported Lemoine's two convictions. As part of its supplemental briefing, the Government filed Lemoine's July 8, 2015, confession and the FBI's forensic analysis of his computer, smartphone, and thumb drive. R. 53 (U.S. Br. in Supp. at 1–8) (Page ID #376–88). At a hearing held on June 18, 2021, the Government argued that Lemoine's conviction for receipt of child pornography was supported by his activities on Playpen: "The FBI logs as demonstrated in the record for [Playpen] show that between January 2nd, 2015, and February 22nd, 2015, [Lemoine] actively logged in the website for 32 hours . . . and was able to view and download multiple posts containing child pornography." R. 74 (6/18/2021 Hr'g Tr. at 13) (Page ID #491). The district court accepted the Government's representation. *Id.* As for Count 2, the Government represented that on July 8, 2015, "the FBI execut[ed] a search warrant, and that include[d] all the material on [Lemoine's] laptop and on [Lemoine's] storage drives and the forensic analyses." *Id.* The Government stressed that the child pornography found in Lemoine's possession on July 8,

2015, was "not the same material that [Lemoine] had accessed and downloaded for Count 1, separate time range." *Id.* As the Government explained, "besides th[e] 32 hours" Lemoine had spent on Playpen between January 2, 2015, and February 22, 2015, he "had over the years downloaded items, [and] had also then transferred them to a different storage device and had others." *Id.* at 10 (Page ID #488). The district court confirmed that it understood that the conduct supporting the charges was "[s]eparate," as described by the Government. *Id.* at 13 (Page ID #491).

Later that same day, the district court entered a memorandum opinion and order denying Lemoine's § 2255 motion. R. 61 (6/18/2021 D. Ct. Mem. Op. and Order at 1) (Page ID #403). The district court found that "Counts One and Two involved different material, different time frames, and different conduct." *Id.* at 2 (Page ID #404). Regarding Count 2, the possession charge, the district court found that the charge was based on "84 images on [Lemoine's] laptop [that] did not overlap with charges in Count One" and on his "thumbdrive contain[ing] 612 unique images and 477 unique videos, not connected to the [Playpen] downloads targeted in Count One." *Id.* at 2–3 (Page ID #404–05). Regarding Count 1, the receiving charge, the district court found that the charge was "limited to [Lemoine's] use of his computer" and "downloads from [Playpen]" and to "[Playpen] downloads targeted in Count One." *Id.* at 3 (Page ID #405) (citing R. 53 (U.S. Br. in Supp. at 3) (Page ID #378)). The district court concluded that Lemoine's counsel could not have been ineffective where there was no double-jeopardy violation. *Id.* at 3–4 (Page ID #405–06).

On September 22, 2021, the district court resentenced Lemoine to a 151-month prison term and a special assessment of $100 based on Count 1, and dismissed Count 2 on the Government's motion. R. 68 (Dkt. Entry, Mins. of Proceedings). We vacated the district court's amended

criminal judgment because the district court lacked jurisdiction to resentence Lemoine, and we remanded with instructions to reinstate the original criminal judgment and for the district court to issue a final order disposing of Lemoine's § 2255 motion. *United States v. Lemoine*, No. 21-3890 (6th Cir. Oct. 6, 2022). The district court did both on October 28, 2022. R. 80 (10/28/2022 D. Ct. Mem. Op. and Order) (Page ID #530) (reinstating original criminal judgment); *see also* R. 81 (10/28/2022 D. Ct. Order) (Page ID #532) (dismissing Lemoine's § 2255 motion and denying a certificate of appealability).

Lemoine timely appealed this decision, and we issued a certificate of appealability as to Lemoine's ineffective-assistance claim. *United States v. Lemoine*, No. 22-3937 (6th Cir. Aug. 14, 2023). As that order noted, "[r]easonable jurists could . . . debate whether [Lemoine's trial] counsel should have raised a double jeopardy claim." *Id.* at 4. If Lemoine establishes that counsel was deficient in failing to raise a double-jeopardy objection, then one of the two counts of conviction must be dismissed and at a minimum the imposition of the statutory special assessment of $100 on each count would show prejudice under the Sixth Amendment. *Lemoine*, 819 F. App'x at 365. Thus, the issue we must resolve is whether the district court erred in finding that Lemoine's counsel was not deficient.

## II. INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIM

Lemoine's appeal boils down to whether his convictions for receiving and possessing child pornography suffer from a double-jeopardy violation. The district court determined that Lemoine's trial counsel could not be constitutionally ineffective where the evidence demonstrated that there was no double jeopardy-violation. If his punishment does not violate the Double Jeopardy Clause, then Lemoine cannot demonstrate that his trial counsel was constitutionally

6

ineffective for failing to object to Lemoine's lawfully imposed sentence. For the reasons that follow, we affirm the district court's finding that Lemoine's punishment does not violate the Double Jeopardy Clause because separate conduct supports his separate convictions. *See Ehle*, 640 F.3d at 698–99.

Ineffective-assistance-of-counsel claims are mixed questions of law and fact. *Strickland v. Washington*, 466 U.S. 668, 698 (1984). "A mixed question asks whether . . . 'the rule of law as applied to the established facts is or is not violated.'" *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). We review a district court's denial of a § 2255 motion and ineffective assistance of counsel claims de novo. *Rodriguez-Penton v. United States*, 905 F.3d 481, 486 (6th Cir. 2018). We "accept the district court's factual findings unless they are clearly erroneous." *Id.*

The district court found that Lemoine's receiving charge was supported by his activities on Playpen, and that his possession charge was supported by all of the images and videos found on his computer and thumb drive, which were separate from his activities on Playpen. R. 61 (6/18/2021 D. Ct. Op. at 2–3) (Page ID #404–05). We hold that the district court did not commit clear error in so finding and, accordingly, Lemoine's punishment did not violate the Double Jeopardy Clause. Although the record is ambiguous as to whether Lemoine downloaded any child pornography from Playpen, the record is unambiguous that Lemoine accessed posts on Playpen that linked to child pornography, and that Lemoine watched videos of child pornography on Playpen via a "Tor" browser. These two activities support the conclusion that Lemoine accessed and viewed child pornography on Playpen, which is sufficient conduct to support his conviction

7

for receipt of child pornography separate from his conviction for possession. Because accessing and viewing (without downloading) child pornography can support a conviction for receiving child pornography, the district court did not commit clear error when it found that Lemoine's unlawful activity could be split into distinct and separate offenses.

The Fifth Amendment's Double Jeopardy Clause precludes the government from punishing Lemoine twice for the same offense. U.S. CONST. amend. V. The Double Jeopardy Clause is potentially implicated here because Lemoine may have been punished for both receiving and possessing the same items of child pornography. In *Ehle*, we held that the possession and the receiving provisions of the child pornography statutes when applied to the same child pornography "proscribe the same offense, since the possessing provision does not require[] proof of any fact that the receiving provision does not." 640 F.3d at 694; *see also United States v. Dudeck*, 657 F.3d 424, 429 (6th Cir. 2011) (recognizing the same rule applies to the receipt and possession provisions of both 18 U.S.C. § 2252 and 18 U.S.C. § 2252A). "As a matter of plain meaning, one obviously cannot 'receive' an item without then also 'possessing' that item, even if only for a moment." *Ehle*, 640 F.3d at 695. In reaching this conclusion, we drew on the Supreme Court's rationale in *Ball v. United States*, wherein the Court held that "it is clear that Congress did not intend to subject felons to two convictions; proof of illegal receipt of a firearm *necessarily* includes proof of illegal possession of that weapon." *Id.* (quoting *Ball v. United States*, 470 U.S. 856, 862 (1985)). "Convicting [Lemoine] of both 'knowingly receiving' and 'knowingly possessing' the same child pornography [would] therefore violate[] the Double Jeopardy Clause." *Id.* at 698.

Before addressing the district court's findings and conclusions, we first consider in greater detail the record evidence on which the district court relied.

## A. Evidence Before the District Court

There are several sources in the record describing Lemoine's unlawful conduct. We find it helpful first to lay out the record, in general terms, before addressing how the individual pieces fit together to create a picture of the entirety of Lemoine's unlawful conduct.

On April 27, 2016, the Government filed its indictment against Lemoine describing, in the most general terms, Lemoine's criminal activities. R. 1 (Indictment at 1) (Page ID #1). Then, on August 10, 2016, the Government filed a plea notice describing the factual basis and relevant conduct for Lemoine's guilty plea, R. 13 (Plea Notice at 5–6) (Page ID #36–37), which the Government also summarized at Lemoine's plea hearing at which he pleaded guilty, held on the same day, R. 31 (8/10/2016 Plea Hr'g Tr. at 12–14) (Page ID #184–86). Nearly three months later, on November 8, 2016, Probation docketed the final PSR for Lemoine, which provided greater detail regarding Lemoine's unlawful conduct. R. 15 (PSR ¶¶ 6–15) (Page ID #56–57). Then, finally, after remand from a prior panel of this court, the Government docketed on January 5, 2021, a confession signed by Lemoine on July 8, 2015, R. 53-1 (Confession) (Page ID #384), and the FBI's forensic analysis of Lemoine's laptop, thumb drive, and smartphone, R. 53-2 (FBI Analysis at 1–4) (Page ID #385–88).

We begin with the confession.[2] On July 8, 2015, the same day that the FBI seized Lemoine's laptop and thumb drive, Lemoine provided a voluntary statement to law enforcement. R. 53-1 (Confession) (Page ID #384). As Lemoine explained in his confession, he "began looking

---

[2]We note that Lemoine's confession states that he was not abused as a child. R. 53-1 (Confession) (Page ID #384). In his interview with Probation, however, Lemoine "described being sexually abused between the ages of 5 and 15 by a male babysitter." R. 15 (PSR ¶ 48) (Page ID #61).

at child pornography around 2010," and he downloaded to his computer child pornography from the internet, which he then saved onto his thumb drive that he hid in his gun cabinet. *Id.* He had not viewed any child pornography within the week leading up to July 8, 2015. *Id.* In addition to generally admitting to downloading child pornography beginning in 2010, Lemoine also specifically admitted to "the use of Tor to watch the videos" on Playpen, to "view[ing] child pornography through a media player . . . from [his] Dell laptop," and to "trad[ing] child pornography for five years via Omegle." *Id.*[3] As the FBI forensic analysis of Lemoine's laptop and thumb drive confirmed, Lemoine had eighty-four unique images of child pornography on his laptop,[4] 612 unique images of child pornography on his thumb drive, and 477 unique videos of child pornography on his thumb drive. R. 53-2 (FBI Analysis at 3) (Page ID #387).

Lemoine does not specifically state from which websites he downloaded and saved child pornography and during what periods of time he accessed the various websites described—except for noting that he used two websites "initially." R. 53-1 (Confession) (Page ID #384). Neither does the FBI analysis of his laptop and thumb drive indicate whether the images and videos found

---

[3]Lemoine also references two other websites by name—but does not admit specifically to accessing child pornography through those sites—and states that if he "found a website [he] liked [he] bookmarked it for future use." R. 53-1 (Confession) (Page ID #384).

[4]In his plea notice, Lemoine agreed to the statement that "[a] forensic analysis of [his laptop, thumbdrive, and smartphone] revealed the presence approximately 487 (487) videos of child pornography on [his] *computer*." R. 13 (Plea Notice at 6) (Page ID #37) (emphasis added). The Government reiterated the same at Lemoine's plea hearing. R. 31 (8/10/2016 Plea Hr'g Tr. at 13) (Page ID #185). After a panel of this court remanded Lemoine's § 2255 motion to the district court for additional fact finding on the double-jeopardy issue, the Government averred that the laptop had no videos of child pornography but eighty-four images of child pornography. R. 53 (U.S. Br. in Supp. at 3) (Page ID #378). The videos were in fact on Lemoine's thumb drive. *Id.* The Government's representations on remand match the numbers listed in the FBI's analysis attached to the Government's brief. R. 53-2 (FBI Analysis at 3) (Page ID #387). Although the sources in the analysis are unlabeled, "Source ID: QCV1B3" shows eighty-four images of "child abuse material," and "Source ID: QCV1B5" lists 487 videos of "child abuse material." *Id.* For these reasons, it is unlikely that Lemoine had 487 videos of child pornography on his laptop rather than his thumb drive.

in Lemoine's possession on July 8 came from Playpen, Omegle, or any other source mentioned in his confession, nor on what dates the files uncovered were downloaded and saved by Lemoine. *See* R. 53-2 (FBI Analysis at 2–3) (Page ID #386–87). Between Lemoine's confession and the FBI's analysis, there is no indication whether the material found in Lemoine's possession on July 8 reflects his entire five-year history of downloading child pornography or some portion thereof, or whether the collection solely came from downloads from Playpen, Omegle, or some other source. Only the PSR describes specific image sets that Lemoine accessed on Playpen on a specific date, but the PSR does not indicate whether Lemoine downloaded any of that material or whether any or all of that material appeared in Lemoine's collection seized on July 8. R. 15 (PSR ¶¶ 11–13) (Page ID #57).

The Government filed an indictment against Lemoine on April 27, 2016. R. 1 (Indictment at 1) (Page ID #1). In Count 1, the Government charged Lemoine with receiving "by computer, numerous computer files, which files contained visual depictions of real minors" from December 26, 2012, through July 5, 2015. *Id.* The Government's theory both before the district court and here before us is that Lemoine "received" computer files of child pornography by downloading images and videos from Playpen to his laptop and thumb drive. *See* R. 74 (6/18/2021 Hr'g Tr. at 13) (Page ID #491) ("between January 2nd, 2015, and February 22nd, 2015, [Lemoine] actively logged in [Playpen] . . . and was able to view and download multiple posts containing child pornography"); *see also* Gov't Br. at 8–9 ("Specifically, Lemoine was charged with receiving child pornography in Count 1, all relating to various images that he downloaded from the Playpen website between January 2, 2015, and February 22, 2015."); R. 13 (Plea Notice at 6) (Page ID #37) ("[Lemoine] used a computer at his home . . . to connect to the Internet and download files that

contained" child pornography). Given the specific charge described in Count 1, the Government's theory makes sense: by downloading files from Playpen to his computer, Lemoine received child pornography computer files.

In Count 2, the Government charged Lemoine with "possess[ing] a computer that contained child pornography" on July 8, 2015. R. 1 (Indictment at 2) (Page ID #2). On July 8, 2015, the FBI seized Lemoine's laptop, thumb drive, and smartphone. *See* R. 53-2 (FBI Analysis at 2–3) (Page ID #386–87). While no child pornography was found on Lemoine's smartphone, the FBI found eighty-four unique images of child pornography on Lemoine's laptop and 612 unique images and 477 unique videos on Lemoine's thumb drive. *Id.* In all, the FBI identified 696 unique images and 477 unique videos between Lemoine's laptop and thumb drive seized on July 8, 2015. *Id.* at 2 (Page ID #386).

## B. The District Court's Decision

Based on the evidence described above, the district court found that no double-jeopardy violation occurred because it believed that different images of child pornography supported Lemoine's separate convictions.

The district court found that the possession charge (Count 2) "relates to at least 697 images and 487 videos" that Lemoine downloaded and saved onto his laptop and thumb drive. R. 61 (6/18/2021 D. Ct. Op. at 2–3) (Page ID #404–05). Specifically, "[o]f these, 84 images on his laptop did not overlap with charges in Count One related to downloads from [Playpen]." *Id.* Further, "Lemoine's thumb drive contained 612 unique images and 477 unique videos, not connected to the [Playpen] downloads targeted in Count One." *Id.* at 3 (Page ID #405). The district court made no specific findings as to the conduct supporting Lemoine's receiving charge

12

(Count 1). Rather than pointing to evidence in the record in support of the receiving charge, the district court defined the receiving charge solely in contrast to Lemoine's possession charge. *See id.* In other words, while the district court was clear that none of the images or videos found in Lemoine's possession related to "[Playpen] downloads targeted in Count One," the district court did not point to any evidence of downloads Lemoine made from Playpen. *Id.*

The hearing that took place prior to the district court's order is illuminating on this point. As we have already explained, at the hearing, the district court accepted the Government's uncontested representation that Count 1 related to the thirty-two hours Lemoine spent on Playpen between January 2, 2015, and February 22, 2015. R. 74 (6/18/2021 Hr'g Tr. at 13) (Page ID #491). At that hearing, the Government represented that Lemoine "view[ed] and download[ed] multiple posts containing child pornography" on Playpen. *Id.* Lemoine's counsel did not object to the Government's factual representations, choosing instead to argue only about application of the sentencing guidelines. *Id.* at 13–14 (Page ID #491–92). The district court thus accepted the Government's unopposed explanation for the factual basis underlying Lemoine's receipt charge. As for the possession charge (Count 2), the district court accepted the Government's uncontested representation that all of the child pornography found on Lemoine's laptop and thumb drive was "not the same material that [Lemoine] had accessed and downloaded" from Playpen between January 2, 2015, and February 22, 2015. *Id.* at 13 (Page ID #491). Lemoine's counsel did not object to this argument either. *See id.* at 13–14 (Page ID #491–92). This means that the district court found that all of the images and videos found in Lemoine's possession on July 8, 2015, did not come from Playpen during the six-week window at the beginning of 2015, without determining the actual sources of that material. Because the PSR indicates that FBI records show that Lemoine

accessed Playpen only during this limited time period, the district court found that Lemoine did not possess any child pornography that he downloaded from Playpen. *See* R. 15 (PSR ¶ 10) (Page ID #57). Neither the Government nor the district court explained where Lemoine's downloads from Playpen ended up, if those downloads were not on his laptop or thumb drive on July 8, 2015.

With this background in mind, we can summarize the district court's findings as follows: Regarding Count 1, the receiving charge, between January 2, 2015, and February 22, 2015, Lemoine downloaded and saved material from Playpen, and none of this material was found in his possession on July 8, 2015, when the FBI seized his laptop and thumb drive. Regarding Count 2, the possession charge, the FBI seized Lemoine's laptop and thumb drive, which contained hundreds of images and videos of child pornography. None of these files were downloaded from Playpen during the period that Lemoine accessed the website as charged in Count 1—despite the fact that Count 1 covered the entire period from December 26, 2012, through July 5, 2015. Thus, according to the district court, separate conduct supported the separate convictions.

## C. Clear-Error Analysis

As our analysis below explains, the district court's finding that separate conduct supported Lemoine's separate convictions was not clear error. Because this finding was not clear error, and because there can be no double-jeopardy violation where separate conduct supports separate convictions, we affirm the district court's order denying Lemoine's § 2255 motion.

Our holding rests on the principle that a defendant may be guilty of receiving child pornography merely by accessing and viewing that material (even if the defendant never downloads that material). The district court found Lemoine downloaded child pornography from Playpen separate from the child pornography found in his possession, which supported his separate

possession conviction. The record does not clearly support a finding that Lemoine downloaded any child pornography from Playpen. The district court's decision is not clear error, however, because even if Lemoine did not download any material from Playpen, his accessing posts and separately viewing videos of child pornography on that website could support his receipt conviction separate from his possession conviction. Because the district court found that none of the material in Lemoine's possession originated from his activities on Playpen, and because it was not clear error for the district court to find that Lemoine's activity on Playpen is legally sufficient to support his receipt conviction, Lemoine's punishment does not violate the Double Jeopardy Clause. In other words, his punishment was lawful because separate conduct supported his separate convictions.

That said, although we ultimately conclude that the district court did not commit clear error in finding that the sixty-five images on Playpen supported his receipt conviction separate from his possession conviction, the district court's factual conclusions are not the model of clarity. The district court's conclusion that there is evidence that the receiving charge is supported by *downloads* from Playpen separate from any of the files found in Lemoine's possession on July 8 is not obviously supported by the record. We acknowledge that Lemoine never contested, either in his briefing or at the hearing, the Government's contention that Lemoine had in fact downloaded the Playpen images. *See, e.g.*, R. 74 (6/18/2021 Hr'g Tr. at 13–14) (Page ID #491–92). The PSR indicates that Lemoine "*accessed*" a series of links containing a total of sixty-five images of child pornography on Playpen on February 22, 2015. R. 15 (PSR ¶¶ 11–13) (Page ID #57) (emphasis added). Lemoine also confessed to "the use of Tor to watch the videos" on Playpen. R. 53-1 (Confession) (Page ID #384). Nowhere, however, does Lemoine admit to downloading material

from Playpen. *Id.* Nor does the PSR state that Lemoine downloaded any material from Playpen. R. 15 (PSR ¶¶ 6–15) (Page ID #56–57). But, as explained below, downloading is not required to support a receipt charge—accessing and actually viewing child pornography is enough. And the record reveals that Lemoine did access posts that linked to at least sixty-five images that the district court concluded supported his receipt charge. Lemoine also confessed to "the use of Tor to watch the videos" on Playpen. R. 53-1 (Confession) (Page ID #384).

To be clear, accessing child pornography with intent to view, 18 U.S.C. § 2252A(a)(5)(B), is a distinct statutory offense from receiving child pornography, 18 U.S.C. § 2252A(a)(2). On October 8, 2008, Congress amended the child pornography statutes to add the words "or knowingly accesses with intent to view," to expressly proscribe accessing child pornography with the intent to view. *See* Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub. L. No. 110–358, § 203, 122 Stat. 4001, 4003 (2008). A Senate report explained that the amendment "fills a gap in existing law that has led some courts to overturn convictions of possessors of child pornography. It amends the child pornography possession offense to clarify that it also covers knowingly accessing child pornography on the Internet with the intent to view child pornography." S. Rep. No. 110–332, at 5 (2008), *available at* 2008 WL 1885750 (2008).

Prior to this amendment, the law was unsettled as to whether simply viewing child pornography on the internet was legal. *E.g.*, *United States v. Tucker*, 305 F.3d 1193, 1205 n.16 (10th Cir. 2002) ("We offer no opinion on whether the mere viewing of child pornography on the Internet, absent caching or otherwise saving the image, would meet the statutory definition of possession. We likewise do not address the question whether an individual could be found guilty of knowingly possessing child pornography if he viewed such images over the Internet but was

ignorant of the fact that his Web browser cached such images."). The 2008 amendment makes clear that knowingly accessing child pornography "with intent to view" is illegal, even if no viewing actually takes place. 18 U.S.C. § 2252A(a)(5)(B).

Other circuits have addressed under what factual circumstances an individual may be guilty of *receiving* child pornography by accessing and actually viewing it on the internet without downloading it under 18 U.S.C. § 2252A(a)(2). *See United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir. 2011) (per curiam); *see also United States v. Kain*, 589 F.3d 945, 949–50 (8th Cir. 2009); *United States v. Winkler*, 639 F.3d 692, 698–99 (5th Cir. 2011); *United States v. Kuchinski*, 469 F.3d 853, 862–63 (9th Cir. 2006). Accordingly, Lemoine could in fact be guilty of receipt by accessing and actually viewing child pornography on his computer—*even if* he did not take the additional step of downloading that material. Lemoine has not argued otherwise—neither before us nor before the district court.

Ultimately, even if the record does not clearly support the district court's finding that Lemoine downloaded material from Playpen separate from the material found in his possession on July 8, it was not clear error for the district court to conclude that Lemoine's activities on Playpen could support his receipt conviction separate from his possession conviction. Specifically, Lemoine's accessing and viewing child pornography on Playpen could support his receipt conviction separate from the child pornography found in his possession on July 8. Thus, the record demonstrates that Lemoine's punishment does not violate the Double Jeopardy Clause.

## IV. CONCLUSION

For these reasons, we **AFFIRM** the district court's order denying Lemoine's § 2255 motion.